## UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

JUSTIN M. DIVEN,

    Plaintiff,

    v.

OFFICER SOUDERS,
OFFICER CRITES and
OFFICER S.B. SWOPE,

    Defendants.

Civil Action No.: TDC-21-1276

### MEMORANDUM OPINION

Self-represented Plaintiff Justin M. Diven filed this civil action pursuant to 42 U.S.C. § 1983 in which he alleges that correctional officers failed to protect him from being assaulted by his cellmate while he was incarcerated at the Maryland Correctional Training Center ("MCTC") in Hagerstown, Maryland. Defendants Correctional Officer Russell Souders, Correctional Officer Crites, and Correctional Officer S.B. Swope have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Diven's memorandum in opposition to the Motion, originally sent to defense counsel, has now been docketed and reviewed by the Court. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

### BACKGROUND

In his Complaint, Diven asserts that on March 7, 2020, between 7:00 p.m. and 9:00 p.m., he was assaulted by his cellmate at MCTC. According to Diven, Officers Souders and Crites "stared and watched" as he was assaulted but did not help him for over 15 minutes. Compl. at 3,

ECF No. 1.  During this time, they put a plexiglass cage outside his door but then walked away. At one point, one of the officers asked, "Is he bleeding yet?"  IGO  No. 20200411 at 2, Mot. Ex. D-1, ECF No. 20-7.

According to Souders, on March 7, 2020 at approximately 8:30 p.m., he was walking through the C Tier of Housing Unit 7 at MCTC, in which segregated male inmates are held.  Diven was banging on his cell door and asked Souders to let him out, but he did not provide a reason for the request.  Souders walked away, but he heard banging again, returned to the cell, and saw Diven's cellmate, Devonte Hammonds, punching Diven in the head and torso.  Souders has asserted that he then called for backup by radio and ordered Hammonds to "get away" from Diven. Souders Decl. ¶¶ 8, 10, Mot. Ex. A, ECF No. 20-3.  Hammonds complied.

Souders has further stated that Crites arrived at the cell within seconds of his radio call, and multiple other officers arrived "very quickly."  *Id.* ¶ 11.  Pursuant to prison policy, correctional officers are not to open a cell door during an inmate fight until the correctional officers present on the scene outnumber the inmates.  Souders asserts that pursuant to this policy, he waited until a third officer had arrived before opening the cell door.  At that point, Diven was escorted, walking unassisted, to the medical unit.  Souders did not observe any serious injuries to Diven.  Hammonds was issued a rule violation and received 100 days in segregation and the loss of 180 credits.

Diven was examined in the medical unit at 8:52 p.m.  The medical provider observed that he had scratches and redness above his eyebrow on his right temple, on his neck, and on his left rib cage, with some open wounds.  According to the medical provider, Diven did not appear to be in acute distress and was walking normally, his heartbeat was regular, and his lungs were clear. He was then released back to his housing unit.

2

In his Complaint, Diven alleges that later that evening, at approximately 12:00 midnight, Diven informed Officer Swope, a correctional officer on the next shift, that his rib felt broken, there was a gurgling noise in his body, and he could not breathe. Diven alleges that although he begged for assistance, rather than take him to the medical unit, Swope laughed at him, told him, "you['re] beat and . . . not going anywhere," and provided no assistance. Opp'n Mot. Summ. J. at 3, ECF No. 24-1.

The next morning, on March 8, 2020 at approximately 10:27 a.m., Diven was brought back to the medical unit. He stated that he had been laying in his cell all night in pain, and he reported present pain in his left rib cage area, which he rated at 9 on a scale of 1 to 10, and difficulty breathing. Diven asserted that during the assault the night before, he had fallen onto the toilet on his left side. Diven was prescribed Tylenol and muscle rub and directed to return to the medical unit if his symptoms did not improve. On March 9, 2020, Diven received an x-ray, which did not show a rib fracture.

In the days following the March 7, 2020 incident, Diven filed numerous Administrative Remedy Procedure complaints ("ARPs"), with the following results.

- On March 8, 2020, Diven filed ARP No. MCTC-0278-20 relating to the neglect of his medical needs. The ARP was received on March 10, 2020 and returned to Diven to provide further information. Diven did not appeal to the Commissioner of Correction ("the Commissioner") and instead filed an appeal to the Inmate Grievance Office ("IGO"). The IGO dismissed the ARP for failure to properly exhaust the ARP process because he had not first appealed to the Commissioner.

- On March 12, 2020, Diven filed ARP No. MCTC-0299-20, again alleging a lack of adequate medical treatment. The ARP was received on March 17, 2020 but was returned

3

to Diven with directions on how to properly fill out the ARP and continuation forms. Diven again did not appeal to the Commissioner but filed an appeal directly to the IGO. The IGO dismissed the ARP for failure to properly exhaust the ARP process because he did not appeal to the Commissioner.

- On March 17, 2020, Diven sent a letter to the IGO complaining about the events of March 7, 2020, including the failure to intervene while he was being beaten and the failure to provide medical care. The IGO, in IGO No. 20200411, responded by dismissing Diven's complaint on preliminary review for failure to exhaust the administrative process.

- On Mach 18, 2020, Diven filed ARP No. MCTC-0277-20, again complaining of the failure to intervene during the assault and the failure to provide him with medical care during and after the March 7, 2020 incident. The ARP was initially dismissed by the Warden on the grounds that the Intelligence and Investigative Division was investigating the matter. Diven appealed to the Commissioner, who found that the ARP was erroneously dismissed and returned it to the MCTC ARP Coordinator for further review. The Warden later dismissed the ARP on the merits, finding that the officers were not negligent in their duties and concluding that they had stopped the fight and that Diven's cellmate had received discipline for his actions. Diven did not appeal the Warden's second dismissal to the Commissioner and instead appealed directly to the IGO. The IGO closed the case because he failed to explain why he had not followed the ARP process.

- On March 21, 2020, Diven filed ARP No. MCTC-0356-20, reasserting his complaint about the lack of medical treatment after the March 7, 2020 assault. The ARP was dismissed as "Ineligible for Resubmission" because it was repetitive of MCTC ARP No. MCTC-0277-20. ARP No. MCTC-0356-20 at 1, Mot. Ex. D-5, ECF No. 20-11. Diven did not appeal

4

to the Commissioner, and the IGO dismissed his appeal to the IGO for failure to exhaust the administrative process by first appealing to the Commissioner.

- On March 23, 2020, Diven filed ARP No. MCTC-0357-20 reiterating his complaints regarding the lack of medical care. This ARP was also dismissed as repetitive of ARP No. MCTC-0277-20. Diven did not file an appeal with the Commissioner, and his IGO appeal was dismissed for failure to exhaust the ARP process by first appealing to the Commissioner.

- On March 30, 2020, Diven filed ARP No. MCTC-0393-20 complaining of the failure to intervene during the March 7, 2020 assault. This ARP was also dismissed as repetitive of ARP No. MCTC-0277-20. This time, Diven filed an appeal with the Commissioner, who dismissed it for procedural reasons and requested that Diven resubmit it with a copy of ARP No. MCTC-0277-20. Diven appealed to the IGO on May 15, 2020. In that appeal, Diven submitted both ARP No. MCTC-0393-20 and ARP No. MCTC-0277-20 to the IGO. In denying his appeal, the IGO stated that it had reviewed both of those ARPs and found that his claim was "wholly lacking in merit" and "failed to state a claim . . . upon which relief can and should be granted" because his claims were repetitive of earlier ARPs. IGO No. 20200664 Ruling at 1, Mot. Ex. D-7, ECF No. 20-13.

## DISCUSSION

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. In their Motion, Defendants assert that (1) Diven failed to exhaust administrative remedies; (2) Defendants are immune from suit in their official capacity; (3) the evidence establishes that Defendants did not fail to protect Diven; (4) the evidence establishes

Defendants were not deliberately indifferent to Diven's medical needs; and (5) Defendants are entitled to qualified immunity.

## I.      Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Defendants filed their Motion as a Motion to Dismiss or, in the Alternative, for Summary Judgment. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule

12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of the Defendants' Motion, and Diven has demonstrated that he received such notice by titling his memorandum in opposition to the Motion "Response to Motion to Dismiss or the Alternative, Motion for Summary Judgment." Opp'n Mot. Summ. J. at 1.  To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002).  Here, Diven's memorandum in opposition to the Motion does not contain a request for discovery.  Under these circumstances, the Court may consider the Motion as one seeking summary judgment on the arguments for which consideration of the attached exhibits is necessary.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is

"genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*

## II.    Exhaustion of Administrative Remedies

Defendants assert the affirmative defense that Diven has failed to exhaust his administrative remedies. Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (2018):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake,* 578 U.S. 632, 642 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore* v. *Bennette,* 517 F.3d 717, 725 (4th Cir. 2008). In *Ross,* the United States Supreme Court identified three circumstances when an administrative remedy is unavailable: when (1) officers are "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the procedure is "so opaque that it becomes, practically speaking, incapable of use"; or (3) prison administrators actively "thwart" inmates from filing grievances through "machination, misrepresentation, or intimidation." *Ross,* 578 U.S. at 643-44. Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).

8

In Maryland prisons, for the type of grievance asserted by Diven, the Administrative Remedy Procedure is the administrative process that must be exhausted. Md. Code Regs. § 12.02.28.02(B)(1), (D) (2022). First, a prisoner must file an ARP with the warden within 30 days of the incident at issue. *Id.* § 12.02.28.05(D)(1) (requiring filing with the "managing official"); *id.* § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); *id.* § 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. *Id.* § 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the IGO. *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210 (West 2017); Md. Code Regs. § 12.07.01.05(B). Inmates may seek judicial review of the IGO's final determinations in the appropriate Maryland Circuit Court. *See* Md. Code Ann., Corr. Servs. § 10-210(a).

Diven initially pursued his claims through ARP Nos. MCTC-0278-20 and MCTC-0299-20, both of which were dismissed for procedural reasons. Although Diven appealed these determinations, he skipped the step of first appealing to the Commissioner and instead appealed directly to the IGO, which then dismissed his appeals for failing to complete that required step. The same sequence of events occurred with respect to ARP Nos. MCTC-0356-20 and MCTC-0357-20.

However, when Diven filed ARP No. MCTC-0277-20 on March 18, 2020 and it was dismissed by the Warden, he appealed that determination to the Commissioner, who found his appeal meritorious and returned the ARP to the Warden for further review. When the Warden then found no merit to Diven's claims, Diven appealed directly to the IGO. At that point, Diven did not respond to the IGO's request for documentation demonstrating that he had followed the ARP

process, so the IGO closed the matter without reviewing the merits of his complaint. Though this sequence of events does not demonstrate that Diven properly exhausted administrative remedies, it must be considered in combination with the processing of ARP No. MCTC-0393-20, filed on March 30, 2020. When this ARP was dismissed by the Warden as repetitive, Diven appealed that determination to the Commissioner and specifically argued that the ARP, as well as others like it, should not have been dismissed as repetitive because they were resubmissions he filed at the direction of the ARP Coordinator. The Commissioner dismissed the appeal for procedural reasons, stating that Diven needed to include ARP No. MCTC-0277-20 in order for his request to be investigated. Diven instead appealed the Commissioner's decision to the IGO, attached ARP No. MCTC-0277-20, and asserted that during the administrative process no one contacted him about the incident and "nobody is doing anything" to address the substance of his claims. IGO Appeal of ARP No. MCTC-0393-20 at 1, Mot. Ex. D-7, ECF No. 20-13.

Based on this record, the Court concludes that Diven exhausted administrative remedies through ARP No. MCTC-0393-20, which he appealed through all three levels of the ARP process. Although he did not resubmit the ARP to the Commissioner for a second time as instructed, his appeal to the IGO could be fairly construed as an appeal of the determination by the Commissioner, reflecting a disagreement with the ruling that the ARP was deficient without additional information, particularly where the IGO did not dismiss the appeal for failing to resubmit it to the Commissioner. When the IGO denied his appeal because it failed to state a claim upon which relief could be granted, he had exhausted administrative remedies. Moreover, because Diven submitted ARP No. MCTC-0277-20 with his appeal to the IGO of ARP No. MCTC-0393-20, and the IGO explicitly stated that it reviewed both ARPs and dismissed Diven's claims "as wholly lacking in merit because [Diven] failed to establish a claim for which this office can grant relief,"

10

the Court finds that Diven also completed the administrative process as to ARP No. MCTC-0277-20, which had by then been reviewed at all three levels of the ARP process. IGO No. 20200664 Ruling at 1. Therefore, the Court finds that Diven exhausted administrative remedies on his claims before filing this action and will not dismiss the Complaint based on a failure to do so.

## III.  Eleventh Amendment

Defendants also assert that to the extent that Diven has filed claims against them in their official capacities, they are immune from suit.  Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from citizen suits in federal court absent state consent or Congressional action. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Claims against state employees acting in their official capacities are the equivalent of claims against the state itself and are therefore also subject to Eleventh Amendment immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The State of Maryland has not waived such immunity for claims brought pursuant to § 1983. Accordingly, Defendants are immune from suit for actions taken in their official capacities, and the Court will dismiss any such claims.

## IV.  Failure to Protect

Diven's claim that the correctional officers waited 15 minutes before intervening to protect him from the assault by his cellmate is fairly construed as an Eighth Amendment claim for failing to protect him from a safety threat.  The Eighth Amendment to the United States Constitution requires prison officials to "take reasonable measures to guarantee the safety of the inmates," including protecting them "from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal citations omitted); *see also Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015). "Being violently assaulted in prison is simply not 'part of the penalty

11

that criminal offenders pay for their offenses against society.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). To prove a prison official's liability for failing to protect a prisoner from other inmates, prisoner plaintiffs must satisfy a two-part inquiry, consisting of objective and subjective prongs. *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

For the objective prong, the prisoner "'must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury' or a substantial risk thereof." *Id.* (quoting *Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014)). This inquiry "requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)).

To meet the subjective prong, a plaintiff must establish that the defendant had a "sufficiently culpable state of mind," consisting of "deliberate indifference to inmate health or safety." *Raynor*, 817 F.3d at 127-28 (quoting *Farmer*, 511 U.S. at 834). Negligent failure to protect an inmate from an attack by another inmate does not violate the inmate's constitutional rights. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). To establish deliberate indifference requires a showing that the official actually "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *Raynor*, 817 F.3d at 128. A "factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. A prison official aware of such a risk to an inmate fulfills the constitutional obligation by taking reasonable steps to avert harm, even if the harm still occurs. *Id.* at 844-45. "In failure to protect cases, 'prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm.'" *Raynor*, 817 F.3d at 128 (quoting *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th

Cir. 1995)). However, a correctional officer's failure to intervene in a beating can form the basis of section 1983 liability if "the officer had a reasonable opportunity to act and 'simply refused to do so.'" *Id.* (quoting *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)).

Here, there is a genuine issue of material fact on whether Souders and Crites acted with deliberate indifference in failing to protect Diven. According to Diven's account, Souders saw that he was being attacked but then walked away. At another point, the correctional officers left a plexiglass screen in front of his cell but took no action to intervene, and at one point one of the officers asked, "is he bleeding yet?" before calling for backup. IGO No. 20200411 at 2. Diven contends that overall, he was left in his cell for over 15 minutes to defend himself after officers saw that Hammonds was attacking him. Souders has provided a contrary account, in which he states that while he heard banging coming from Diven's cell and Diven requesting that he be allowed to leave his cell, Diven did not state that he was being assaulted. According to Souders, when he looked a second time, he saw for the first time Hammonds assaulting Diven and immediately called for backup and ordered Hammonds to stop the attack. He did not immediately enter the cell because prison policy required him to wait for two other officers to arrive before intervening, but the additional officers arrived within minutes and they quickly entered and separated Diven and Hammonds.

Although Souders has provided an account that, if true, would reasonably explain his conduct, on a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the nonmoving party. Where Diven has offered a contrary account under which Defendants arguably were aware of an assault on him and deliberately failed to intervene for an extended period of time, there are genuine issues of material fact, including on when Souders first became aware that an assault was underway and whether Souders and Crites deliberately delayed

13

their intervention, that preclude summary judgment at this time. Accordingly, the Motion will be denied on this claim.

## V.   Denial of Medical Care

Fairly construed, the Complaint alleges no deficiencies in the provision of medical care immediately after the assault but instead alleges that during the hours after Diven was returned to his cell, the pain in his ribs intensified to the point that he needed additional medical attention, but Swope refused to arrange for such care and even laughed at him.

In order to state an Eighth Amendment claim based on a denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure that the needed care was available. *See Iko v. Shreve,* 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko,* 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson v. Lightsey,* 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer,* 511 U.S. at 837). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts

or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry,* 841 F.3d 219,225 (4th Cir. 2016) (internal alterations omitted).

Immediately following the incident, Diven was observed with scratches on his forehead and the side of his neck. Diven was seen within 30 minutes of the incident by a medical provider, who noted "superficial scratches" on Diven's neck, rib cage, and right temple above his eyebrow. Med. Records at 2, Mot. Ex. C, ECF No. 20-5. He also had redness, but no bruising or swelling, around his rib cage. Diven contends that while he was evaluated by the medical department, he did not receive any treatment for his injuries. As correctional officers took Diven to receive medical care immediately after the fight, Defendants cannot be said to have been deliberately indifferent to any medical need on March 7, 2020.

At this point, however, there is a genuine dispute of material fact on whether correctional officers were deliberately indifferent to Diven's medical needs during the night shift between March 7 and March 8, 2020. Diven asserts that around 12:00 midnight, he told Swope that he had just been in fight, he could not breathe, he believed his ribs were broken, and he needed to see a doctor. Instead of arranging for medical care, Swope laughed at him, told him that he was "beat," and told him that he was "not going anywhere." ARP No. MCTC-0278-20 at 1, ECF No. 20-9. He also asserts that correctional officers on the prior shift told Swope to ignore Diven, and that Crites moved him to a cell in the back of the tier so no one could hear his complaints and threatened to pepper spray him when Diven claimed he could not breathe. Although Diven asserts that based on his rib pain he could not breathe or move and thought he was going to die, he was not taken to the medical unit until approximately 10:26 a.m. the next morning, after Swope's shift had ended.

15

Notably, Defendants have provided no contrary account from Swope or Crites to refute Diven's version of events. Rather, they argue that because the March 9, 2020 x-ray revealed no broken ribs, Diven did not have a serious medical need. Where it is undisputed that Diven was assaulted by his cellmate and suffered injuries documented during the initial medical visit at 8:52 p.m. on March 7, 2020, there remains a factual question of whether, even without broken ribs, Diven was suffering such significant pain and difficulty breathing that he had a serious medical need warranting medical attention during the overnight hours. Moreover, where Diven has provided uncontroverted assertions that Swope laughed at him when he requested medical care, and that he was moved to another cell so that his pleas for help could not be heard, there is evidence in the record on the subjective component of Diven's claim that, if true, could show that Swope and Crites subjectively knew of his medical need and that the failure to provide medical care was deliberate. Therefore, summary judgment will be denied on this claim.

## VI.    Qualified Immunity

Although Defendants generally assert qualified immunity, they provide only generic statements of the principles of qualified immunity and offer no substantive argument on this issue. Under such circumstances, the Court finds that Defendants have not offered a proper basis for application of the doctrine.

Even if the Court were to consider this argument on the merits, it fails on this record. When qualified immunity is asserted, the court must consider two questions: (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the official violated a constitutional right; and (2) "'whether the right was clearly established'—that is, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Henry v. Purnell*, 501 F.3d 374, 377 (4th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)). For

16

qualified immunity to apply, only one of the questions has to be resolved in favor of the defendant. *See id.*

Based on the case law identified above, Defendants cannot seriously dispute that there is clearly established law under which a correctional officer's deliberate failure to protect an inmate from an assault by another inmate, or deliberate indifference to a serious medical need based on a correctional officer's failure to arrange for necessary medical care, can constitute violations of the Eighth Amendment. *See supra* parts IV, V. As for whether such a violation has occurred, as discussed above, there are presently genuine issues of material fact that preclude a grant of qualified immunity at this time. *See id.* The Motion will therefore be denied on the issue of qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. The Motion will be granted as to any claims against Defendants in their official capacities and will be otherwise denied. A separate Order shall issue.

Date:  September 14, 2022

THEODORE D. CHUANG
United States District Judge

17