UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

JUSTIN MICHAEL DIVEN,

    Plaintiff,

    v.

RUSSELL SOUDERS,
*Correctional Officer, Maryland Correctional Training Center, in his individual capacity*

J.B. SWOPE,
*Correctional Officer, Maryland Correctional Training Center, in his individual capacity*

JAMES CRITES,
*Correctional Officer, Maryland Correctional Training Center, in his individual capacity*

GEORGE J. MORRIS
*Former Chief of Security, Maryland Correctional Training Center, in his individual and official capacities*

JOSEPH R. LOHMAN
*Chief of Security, Maryland Correctional Training Center, in his individual and official capacities*

JOHN DOES #1-10,
*Correctional Officers, Maryland Correctional Training Center, in their individual capacities*

VERONICA MOORE
*Executive Director, Maryland Commission on Correctional Standards, in her official capacity*

ALBERT LIEBNO
*Executive Director, Maryland Police & Correctional Training Commissions, in his official capacity*

Civil Action No. 1:21-cv-1276-TDC

Judge Theodore D. Chuang

JURY TRIAL DEMANDED

1

THOMAS P. MARTIN
*Director of Correctional Training, Maryland*
*Police & Correctional Training*
*Commissions, in his official capacity*

VIOLET JACKSON,
*Assistant Director of Correctional Training,*
*Maryland Police & Correctional Training*
*Commissions, in her official capacity*

ANNIE HARVEY
*Maryland Commissioner of Correction, in*
*her official capacity*

        Defendants.

## FIRST AMENDED COMPLAINT

Plaintiff Justin Michael Diven, by and through his undersigned attorneys, brings the following action arising out of the United States Constitution, the laws of the United States, the Maryland Constitution, and the laws of Maryland, and alleges as follows:

## INTRODUCTION

1.      On or about March 7, 2020, Mr. Diven was subjected to a severe and prolonged assault by his cellmate, Devonte Hammonds, at the Maryland Correctional Training Center ("MCTC") in Hagerstown, Maryland. During the assault, Mr. Hammonds punched Plaintiff repeatedly in the head, neck, and ribs. Plaintiff felt unable to defend himself because he had seen Mr. Hammonds with knives two days earlier.

2.      At the very beginning of the assault, Mr. Diven pleaded with MCTC Officer Russell Souders to let him out of his cell because Mr. Hammonds was going to hurt him. Instead of removing Mr. Diven from danger, Officer Souders responded to Mr. Diven's pleas by threatening

2

to mace him if he did not take his hands out of the slot in his cell door; Officer Souders then walked away, leaving Mr. Diven at the mercy of his cellmate.  During the course of the approximately forty-minute assault, at least two MCTC officers—including Defendants Souders and James Crites—had multiple opportunities to intervene and spare Mr. Diven from further injury.  Instead, the two guards at one point installed a plexiglass cage to muffle the sounds of Mr. Diven's pleas for help, and at another point stood and observed the assault taking place, with Crites' asking Souders, "is he bleeding yet?"

3.　　　To make matters worse, Defendants Crites and a third correctional officer—J.B. Swope—repeatedly refused to allow Mr. Diven to obtain necessary medical attention once his injuries set in.  As a direct result of Defendants' callous disregard for Mr. Diven's safety, Plaintiff suffered numerous physical, emotional, and other injuries, including, but not limited to, numerous welts and abrasions on his head, face, and ribs, severe pain, persistent headaches, feelings of powerlessness against cellmates and guards, worsened post-traumatic stress disorder, and difficulty sleeping.

4.　　　In permitting this shocking assault to take place and then depriving Mr. Diven of medical care in its aftermath, Souders, Crites, and Swope acted with malice, gross negligence, and deliberate indifference to Plaintiff's wellbeing.  These officers' actions were not legally justified and violated clearly established state and federal law.

5.　　　The Officers' misconduct against Mr. Diven did not occur in isolation and instead was part of a pattern of misconduct resulting from inadequate training and supervision.  As discussed below, another MCTC inmate alleges that he suffered nearly identical mistreatment only

weeks earlier,[1] and publicly-available information indicates a systematic failure across the Maryland prison system to protect inmates from violence by their cellmates.

6.    Plaintiff seeks nominal, compensatory, and punitive damages from the Defendants sued in their individual capacities, and prospective injunctive relief against officers sued in their official capacities.

## PROCEDURAL HISTORY

7.    This action was commenced *pro se* on May 24, 2021.  ECF No. 1.  The complaint named Correctional Officers Souders and Crites as Defendants in both their individual and official capacities, and alleged that these officers failed to protect Plaintiff during the attack by his cellmate and that Crites later denied Plaintiff medical care.  *Id.*

8.    The warden of the Maryland Correctional Training Center accepted service on behalf of Defendants Souders and Crites, as well as a third Defendant not named in the complaint, J.B. Swope.  ECF No. 17 at 2.

9.    On November 24, 2021, Defendants, through counsel, moved to dismiss the complaint for failure to state a claim or in the alternative moved for summary judgment on all claims.[2]  ECF No. 20.

10.    Plaintiff submitted a response in opposition to Defendants' motion on January 31, 2022.[3]

11.    On September 15, 2022, the Court entered a Memorandum Opinion and Order

---

[1] *See Whitehurst v. Dovey*, 2022 WL 952027, at *7-9 (D. Md. Mar. 30, 2022).

[2] Defendants' motion treated J.B. Swope as a defendant even though he was not listed in the complaint.

[3] Plaintiff originally sent his response brief to opposing counsel Sandra Lee, who in turn filed the response brief on the docket.  *See* ECF No. 24.

granting in part and denying in part Defendants' motion. ECF Nos. 25 and 26. In particular, the Court dismissed all claims against Defendants in their official capacities but otherwise allowed all of Plaintiffs' remaining claims against Defendants in their individual capacities to proceed past the pleading stage. ECF No. 25.

12.     On October 13, 2022, Defendants submitted their Answer to Plaintiff's Complaint.

13.     On October 24, 2022, the Court appointed Williams & Connolly LLP as counsel for Plaintiff in this case. ECF No. 30.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this district.

16.     This Court has personal jurisdiction over each Defendant because each Defendant resides in the State of Maryland and/or maintains a continuous and systematic business presence in this State such that each Defendant is at home in Maryland, and this action relates to acts or omissions by Defendants that took place in this State.

## PARTIES

17.     Justin Michael Diven is the Plaintiff in this action. Mr. Diven currently resides in Westover, Maryland, where he is incarcerated in the Eastern Correctional Institution.

18.     Defendant Russell Souders, who is being sued in his individual capacity, is a correctional officer with the Maryland Department of Public Safety & Correctional Services ("DPSCS").

19.    Defendant James Crites, who is being sued in his individual capacity, is a correctional officer with the Maryland DPSCS.

20.    Defendant J.B. Swope, who is being sued in his individual capacity, is a correctional officer with the Maryland DPSCS.

21.    Defendant George J. Morris, who is being sued in his individual capacity, is the former Chief of Security at the Maryland Correctional Training Center, a prison operated and managed by the Maryland DPSCS. As Chief of Security, Defendant Morris supervised uniformed correctional staff, as measured by a review of completed annual efficiency ratings, institutional training records, and other documents verifying compliance with human resource requirements. Defendant Morris's role also included maintaining the custody of inmates and the security of the institution, as measured by a review of compliance audit reports, serious incident reports, and other documents reflecting the overall soundness of institutional security. Defendant Morris also reviewed all use of force incidents and ensured that all investigations were completed appropriately and in a timely manner.

22.    Defendant Joseph R. Lohman, who is being sued in his individual capacity, is the current Chief of Security at the Maryland Correctional Training Center, a prison operated and managed by the Maryland DPSCS. As Chief of Security, Defendant Lohman supervises uniformed correctional staff, as measured by a review of completed annual efficiency ratings, institutional training records, and other documents verifying compliance with human resource requirements. Defendant Lohman's role also includes maintaining the custody of inmates and the security of the institution, as measured by a review of compliance audit reports, serious incident reports, and other documents reflecting the overall soundness of institutional security. Defendant

Lohman also reviews all use of force incidents and ensures that all investigations were completed appropriately and in a timely manner.

23.     Defendant Veronica Moore, who is being sued in her official capacity, is the Executive Director of the Maryland Commission on Correctional Standards.  The Commission provides advice to the secretary of the DPSCS regarding standards for state, local, and privately-operated correctional facilities.

24.     Defendant Albert Liebno, who is being sued in his official capacity, is the Executive Director of the Maryland Police & Correctional Training Commissions.  The Commissions provide training and regulatory services to Maryland's certified police and correctional professionals through the recommendation and implementation of standards.

25.     Thomas Martin, who is being sued in his official capacity, is the Director of Correctional Training for the Maryland DPSCS and member of the Maryland Police and Correctional Training Commission.   Mr. Martin's responsibilities include managing and supervising employees and unit activities assigned to the Correctional and Parole & Probation training units. Mr. Martin also directs operations of the Correctional and Parole & Probation entry-level academies to ensure compliance with minimum standards, coordination of activities between academic and skilled training, and serve as a liaison between training staff and Departmental management.   Mr. Martin furthermore reviews for approval and provides oversight for the Correctional and Parole & Probation training programs of yearly in-service.  Finally, Mr. Martin represents the Executive Director and/or Deputy Director of the Commission at various events and committees for correctional training issues and assists Maryland agencies with training projects.

26.     Defendant Violet Jackson, who is being sued in her official capacity, is the Assistant Director of Correctional Training for the Maryland Department of Public Safety &

Correctional Services and member of the Maryland Police and Correctional Training Commission. In this role, Ms. Jackson conducts coordination and oversight of in-service and entry-level training for all institutions throughout the Maryland DPSCS. Ms. Jackson also coordinates and oversees the Field Training Officer Program for the DPSCS. Further, Ms. Jackson assists in the development of training programs that address Departmental needs and maintains professional training for all departmental employees. Finally, Ms. Jackson coordinates and assists in developing in-service training for supervisors in the Department of Public Safety and Correctional Services.

27. Defendant Annie Harvey, who is being sued in her official capacity, is the Maryland Commissioner of Correction. In that role, Ms. Harvey oversees at least twelve correctional institutions managed and operated by the Maryland DPSCS, including the Eastern Correctional Institution and the Maryland Correctional Training Center.

## STATEMENT OF CLAIMS

28. On or about March 7, 2020, Plaintiff was confined in Building 7 of the Maryland Correctional Training Center ("MCTC"), a correctional institution run by the Correction Division of the Maryland Department of Public Safety & Correctional Services.

29. Plaintiff, who is white, was paired with a cellmate, Devonte Hammonds, who is black and a member of the Black Guerrilla Family.

30. On information and belief, members of the Black Guerrilla Family gang have a reputation within the MCTC of being violent, particularly towards white inmates.

31. On or around 8:30 p.m. on March 7, 2020, Hammonds demanded that Plaintiff leave his cell, telling Plaintiff, "you gotta go" and making other verbal threats.

32.     Shortly thereafter, Hammonds punched Plaintiff with a closed fist and told Plaintiff to kick the door of the cell until guards took him out.

33.     Plaintiff was afraid to defend himself because he had seen Hammonds with knives two days earlier.

34.     Under threat of physical violence, Plaintiff kicked on his cell door in order to get the guards' attention.   Hammonds resumed punching Plaintiff whenever Plaintiff became too fatigued to continue kicking the door.

35.     Ten to fifteen minutes later, correctional officer Russell Souders appeared at Plaintiff's cell door and asked what was going on.

36.     Plaintiff told Souders that he needed to be taken out of his cell because he and Hammonds were going to fight and Hammonds was going to hurt Plaintiff.

37.     Plaintiff stuck one of his hands out of the food slot in his cell door to get Souders' attention.

38.     Souders responded by threatening to mace Plaintiff if he did not bring his hand back into his cell.

39.     Souders refused to take Plaintiff out of his cell and walked away towards the guard's station, about twenty-five (25) feet away from Plaintiff's cell.

40.     Plaintiff resumed kicking his cell door and cried out to the guards to let him out of his cell.

41.     Approximately five minutes later, Souders and correctional officer James Crites appeared at Plaintiff's cell.

42.     Plaintiff told Souders and Crites that he was in danger of further assault from his cellmate and needed to be taken out of his cell.

43.     Furthermore, on information and belief, Souders and Crites at this time would have witnessed Hammonds' swinging his fist at Plaintiff.

44.     Souders and Crites did not extract Plaintiff from his cell and instead installed a plexiglass cage above Plaintiff's cell door.

45.     On information and belief, the plexiglass cage installed by Souders and Crites was used to muffle the sound of Plaintiff's kicking and prevent the spread of fluids outside of the cell that may result from the fight between Plaintiff and Hammonds.

46.     After installing the plexiglass cage, Souders and Crites left Plaintiff's cell.

47.     At this point, Hammonds continued to punch and kick Plaintiff whenever Plaintiff was unable to continue kicking his cell door.

48.     Souders and Crites returned to Plaintiff's cell approximately fifteen minutes later.

49.     On information and belief, Souders and Crites at this time would have witnessed Hammonds' punching Plaintiff's head.

50.     Souders and Crites stood outside of Plaintiff's cell and watched as Hammonds assaulted Plaintiff.

51.     After approximately one minute, Crites asked Souders, "is [Plaintiff] bleeding yet?"

52.     Souders and Crites continued watching Plaintiff get assaulted for another two to four minutes without attempting to intervene.

53.     Upon the arrival of a third corrections officer (whose identity is unknown), Souders yelled at Hammonds to stop assaulting Plaintiff.

54.     Hammonds complied with Souders' order and ceased his assault.

55.     One of the guards proceeded to handcuff Plaintiff first through the slot of the cell door while the door remained locked.

56.     For approximately one minute, Plaintiff was handcuffed while Hammonds was not, leaving him vulnerable to further attack by Hammonds.

57.     After Hammonds was handcuffed, the guards opened the cell door and took both Plaintiff and Hammonds to the medical unit.

58.     Plaintiff was examined by the MCTC medical unit, which documented wounds to Plaintiff's head, face, neck, and ribs, and prescribed pain medication.   *See* ECF Nos. 20-4 at 11-12 (showing pictures of injuries); 20-5 at 2-3 (showing treatment records).

59.     At the time he was examined by the medical unit, Plaintiff felt slight rib irritation as well as knots on his head, forehead, neck, and jaw.

60.     Plaintiff was taken from the medical unit to a new cell with a different cellmate.

61.     Approximately fifteen minutes after being released from the medical unit, Plaintiff began feeling substantial additional pain in his ribs as well as difficulty breathing.  Plaintiff also felt a gurgling sensation in his ribs that he thought was internal bleeding.   These new symptoms caused Plaintiff to panic, cry, and sweat.

62.     Approximately twenty minutes after arriving in his new cell, Crites ordered Plaintiff to move to yet another cell.

63.     Plaintiff informed Crites that he was physically unable to move to a new cell because of his pain and that he preferred to stay in his current cell.

64.     Plaintiff also asked Crites to take him to the medical unit for further examination.

65.     Officer Crites responded by refusing to take Plaintiff to the medical unit and by threatening to mace Plaintiff if he did not comply with his request to move to a new cell.

66.     Plaintiff's new cellmate assisted Plaintiff in moving out of his cell.

67.     Plaintiff's third cell was cell #15 in "A-tier," the farthest cell down the hall from the guard's station.

68.     While in cell #15, Plaintiff continued to have severe pain and difficulty breathing, and asked the inmates in surrounding cells to bang on their cell doors to get the guards' attention.

69.     Crites arrived at Plaintiff's cell and again refused to take Plaintiff to the medical unit, stating, "you should've told medical [before]."

70.     Plaintiff could not have informed the medical unit of his severe pain and difficulty breathing because those symptoms manifested only after he had been evaluated.

71.     Plaintiff tried to get the attention of two additional unknown correctional officers, each of whom ignored Plaintiff.

72.     On information and belief, Crites informed the correctional officers on the next shift that Plaintiff had already received medical care and instructed them not to take Plaintiff back to the medical unit.

73.     Plaintiff tried to get the attention of two additional correctional officers on the next shift, each of whom ignored Plaintiff.

74.     Plaintiff then encountered correctional officer J.B. Swope during his rounds and asked Swope to take him to the medical unit because he was having trouble breathing.

75.     Swope likewise refused to take Plaintiff to the medical unit, telling Plaintiff, "they told me about you; you're beat."

76.     At that moment, Plaintiff thought that he was going to die from his injuries.

77.     The next morning, on March 8, 2020, a shift sergeant took Plaintiff to the medical unit, which conducted a physical examination of Diven's ribs. Plaintiff reported pain of 9/10 on

the numeric scale and the examining nurse noted the presence of "multiple abrasions to forehead, neck and left side of trunk."

78.     In addition, the examining nurse confirmed Plaintiff's complaints of difficulty breathing; the nurse noted "diminished" lung sounds due to "poor inspiration."  ECF No. 20-5 at 3 (showing treatment records).

79.     The doctor on staff prescribed pain medication and scheduled an x-ray of Plaintiff's ribs, which was conducted five days later on March 13, 2020.  *See* ECF No. 20-5 at 6, 8-9 (showing medical records).

80.     Although the x-ray was negative for broken ribs, Plaintiff was prescribed a second type of pain medication on March 13, 2020, *see* ECF No. 20-5 at 7, and continued to feel pain for at least thirty days after the assault.

81.     Plaintiff also experienced, and continues to experience, psychological trauma as a result of the attack and Defendants' unlawful failure to protect Plaintiff.

82.     Hammonds was convicted of violating prison rules for attacking Plaintiff and assessed a loss of 200 good time credits and 100 days of administrative segregation.  ECF No. 20-4 at 6 (showing Hammonds' inmate hearing record).

83.     Plaintiff suffered numerous injuries as a result of the attack and the failure by Souders and Crites to intervene on March 7, 2020: (a) welts, abrasions, and bruises to head, face, neck, and ribs, (b) severe emotional and psychological trauma, including post-traumatic stress disorder, (c) fear of death, (d) fear and distrust of correctional officers and cellmates, (e) recurring nightmares of being attacked and abandoned, (f) difficulty sleeping, (g) pain and suffering, (h) embarrassment, and (i) inconvenience.

84.     Plaintiff suffered assault, negligence, gross negligence, violations of the Maryland declaration of rights, and violation of the United States Constitution.

85.     Nothing in this Complaint should be construed to be a limitation on additional defendants or claims that may be added upon future investigation and discovery in this case.

## CLAIMS

### Count I
42 U.S.C. § 1983
(Failure to Intervene or Protect)
(Officers Souders and Crites)

86.     Plaintiff hereby adopts and incorporates by reference the allegations contained in all of the paragraphs of this complaint as if set forth fully herein.

87.     Defendants Souders, Crites, and other unnamed officers acted with deliberate indifference when they became aware that Plaintiff faced a serious risk of physical and emotional harm from his cellmate and knowingly disregarded that risk by failing to intervene to protect Plaintiff. Accordingly, Officers Souders and Crites, under color of state law, violated Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

88.     Plaintiff informed Officer Souders and Crites multiple times of his cellmate's threats to attack him and asked the officers to remove Plaintiff from his cell. In addition, Officers Souders and Crites witnessed Plaintiff's cellmate physically assaulting Plaintiff by swinging his fist at Plaintiff's head and ribs.

89.     By failing to extract Plaintiff from his cell or take immediate actions necessary to do so, or by otherwise failing to end the altercation between Plaintiff and his cellmate, Officers Souders and Crites allowed Hammonds to assault Plaintiff for twenty to twenty-five minutes longer than he should have been, resulting in substantial physical and emotional injuries to Plaintiff.

90.     At no time was Plaintiff or his cellmate a threat to the safety of MCTC officers, as Plaintiff's cell door was kept locked until both Plaintiff and his cellmate were handcuffed.

91.     During the course of the assault, Plaintiff feared for his life and safety, and was at the mercy of his cellmate until MCTC officers intervened.

92.     At all relevant times, Officers Souders and Crites acted under color of State law and under their authority as Maryland correctional officers.

93.     When Officers Souders and Crites failed to intervene to assist Plaintiff, they had no constitutional basis for their inaction.

94.     Officers Crites' and Souders' deliberate indifference to Plaintiffs' safety subjected Plaintiff to cruel and unusual punishment in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

95.     As a direct and proximate result of Officers Souders' and Crites' misconduct, Plaintiff suffered physical and emotional injuries, pain and suffering, humiliation, and embarrassment, and other injuries as described above.

**Count II**
42 U.S.C. § 1983
(Denial of Adequate Medical Care)
(Officers Crites and Swope and four John Doe Defendants)

96.     Plaintiff hereby adopts and incorporates by reference the allegations contained in all of the paragraphs of this complaint as if set forth fully herein.

97.     Plaintiff had a serious need for medical attention after he experienced severe pain and difficulty breathing resulting from the attack by his cellmate.

98.     Officers Crites and Swope knew of or were deliberately indifferent to Plaintiff's serious need for medical attention, but nonetheless repeatedly failed to take reasonable measures to ensure that Plaintiff received proper medical attention.

99.     Plaintiff informed Officer Crites on at least two occasions that he was physically unable to move due to pain in his ribs and difficulty breathing, and needed to be taken to the medical unit.  Officer Crites refused to take Plaintiff to the medical unit and informed the next shift that Plaintiff should not be given medical attention.

100.    Plaintiff also informed Officer Swope of his trouble breathing and asked to be to be taken to the medical unit.  Officer Swope declined, telling Plaintiff, "they told me about you; you're beat."

101.    John Doe Officers Nos. 1-4 witnessed Plaintiff's non-verbal requests for assistance, but nonetheless ignored Plaintiff.

102.    At all relevant times, Defendants acted under color of State law and under their authority as Maryland correctional officers.

103.    As a result of Defendants' refusal to allow Plaintiff to receive medical attention, Plaintiff suffered severe pain, difficulty breathing, mental anguish, fear of death, and other injuries as described above.

**Count III**
Maryland Declaration of Rights Articles 16 & 25
(Failure to Intervene or Protect)
(Officers Souders and Crites)

104.    Plaintiff hereby adopts and incorporates by reference the allegations contained in all of the paragraphs of this complaint as if set forth fully herein.

105.    Defendants Souders and Crites violated Plaintiff's rights under Articles 16 and 25 of the Maryland Constitution when they failed to take reasonable steps to intervene in the altercation between Plaintiff and his cellmate despite knowledge of the serious and imminent risk of harm to Plaintiff.  This failure to intervene subjected Plaintiff to cruel and unusual punishment in the form of serious physical and mental injuries as described above.

106.    Defendants Souders and Crites, at all times relevant hereto, acted under color of State law and in a manner that was not objectively reasonable, when they improperly and without justification failed to protect Plaintiff from harm at the hands of his cellmate. Defendants Souders and Crites at all times acted with actual malice.

107.    As a direct and proximate result of Officers Souders' and Crites' conduct and/or inaction, Plaintiff suffered physical and emotional injuries, pain and suffering, humiliation, and embarrassment, and other injuries as described above.

**Count IV**
Maryland Declaration of Rights Articles 16 & 25
(Denial of Adequate Medical Care)
(Officers Crites and Swope)

108.    Plaintiff hereby adopts and incorporates by reference the allegations contained in all of the paragraphs of this complaint as if set forth fully herein.

109.    Defendants Crites and Swope violated Plaintiff's rights under Articles 16 and 25 of the Maryland Constitution when they denied Plaintiff access to medical care despite knowledge of Plaintiff's serious medical need. This denial of access to medical care subjected Plaintiff to cruel and unusual punishment in the form of debilitating pain, mental anguish, fear of death, and other serious physical and mental injuries as described above.

110.    John Doe Officers Nos. 1-4 witnessed Plaintiff's non-verbal requests for assistance, but nonetheless ignored Plaintiff.

111.    Defendants at all times relevant hereto acted under color of State law and in a manner that was not objectively reasonable, when they improperly and without justification denied Plaintiff access to necessary medical care. Defendants Crites and Swope at all times acted with actual malice.

112.     As a direct and proximate result of Defendants' conduct and/or inaction, Plaintiff suffered physical and emotional injuries, pain and suffering, humiliation, and embarrassment, as well as other injuries as described above.

### Count V
(Assault)
(Officers Souders and Crites)

113.     Plaintiff hereby adopts and incorporates by reference the allegations contained in all of the paragraphs of this complaint as if set forth fully herein.

114.     On March 7, 2020, Defendant Souders threatened to mace Plaintiff if he did not take his hands out of the food slot in his cell door. Plaintiff had placed his hands through the slot of his cell as he begged Officer Souders to remove him from harm's way.

115.     By threatening to mace Plaintiff, Officer Souders acted with intent to create an imminent apprehension of harmful or offensive contact with Plaintiff's person. Defendant Souders also acted with actual malice.

116.     Immediately preceding Officer Souders' threat to mace Plaintiff, Plaintiff was placed into apprehension of imminent harmful or offensive contact.

117.     On March 7, 2020, Officer Crites threatened to mace Plaintiff if he did not move from the cell he was staying in.  Plaintiff had explained to Officer Crites that he was unable to move because of the physical injuries he had sustained in the attack by his cellmate.

118.     By threatening to mace Plaintiff, Officer Crites acted with intent to create an imminent apprehension of harmful or offensive contact with Plaintiff's person. Defendant Crites also acted with actual malice.

119.     Immediately preceding Officer Crites' threat to mace Plaintiff, Plaintiff was placed into apprehension of imminent harmful or offensive contact.

120.    Officers Souders' and Crites' threats to mace Plaintiff were done with actual malice and without a legitimate penological purpose.

**Count VI**
(Intentional Infliction of Emotional Distress)
(Officers Souders, Crites, and Swope)

121.    Plaintiff hereby adopts and incorporates by reference the allegations contained in all of the paragraphs of this complaint as if set forth fully herein.

122.    During the assault against Plaintiff by his cellmate, Officers Souders and Crites casually observed Plaintiff suffer severe injury without taking steps to intervene.

123.    Officers' Souders' and Crites' inaction prolonged Plaintiff's assault by at least 20 minutes.

124.    Officer Souders threatened to mace Plaintiff in response to Plaintiff's requests for help.

125.    After the assault against Plaintiff by his cellmate, Officers Crites and Swope expressly denied Plaintiffs' requests for medical attention, despite their knowledge that Plaintiff had been assaulted shortly beforehand.

126.    Officer Crites threatened to mace Plaintiff despite knowing that Plaintiff was unable to comply with Crites' request to move to a different cell.

127.    The conduct of Officers Souders, Crites, and Swope was extreme and outrageous.

128.    As a direct result of Officer Defendants' conduct and inaction, Plaintiff experienced severe emotional distress, for which he continues to receive medication.

**Count VII**
(Supervisory Liability, 42 U.S.C. § 1983)
(Defendants Morris and Lohman)

129.    Plaintiff hereby adopts and incorporates by reference the allegations contained in all of the paragraphs of his complaint as if set forth fully herein.

130.    As Chief of Security at MCTC, Defendants Morris and Lohman individually and on behalf of the DPSCS unreasonably failed to train and supervise their subordinate correctional officers.

131.    Plaintiff's constitutional injuries were a direct and proximate cause of Defendants Morris's and Lohman's failure to train and supervise their subordinate correctional officers.

132.    Shortly before the incident where MCTC officers failed to protect Mr. Diven from assault, Defendants Morris and/or Lohman had become aware of at least one similar incident of misconduct by their subordinate officers but nonetheless failed to take corrective action.

133.    On February 23, 2020, MCTC inmate Keston Whitehurst was severely beaten by his cellmate. *See Whitehurst v. Dovey*, 2022 WL 952027 (D. Md. Mar. 30, 2022).

134.    In a sworn statement, Whitehurst alleged that shortly before the assault, he had notified an MCTC correctional officer that he was at risk of imminent harm from his cellmate but that the officer walked away without assisting him. *Whitehurst*, 2022 WL 952027, at *7.

135.    On March 4, 2020, MCTC investigators learned that Whitehurst's assailant had told the officer shortly before the assault that he would "kill" Whitehurst. *Id.*

136.    The correctional officer involved stated that he eventually became aware of the physical altercation between Whitehurst and his cellmate but did not intervene until additional officers arrived. *Id.* at *8.

137.     On March 30, 2022, the District Court for the District of Maryland permitted Whitehurst to take his deliberate indifference claims before a jury, denying the correctional officer defendants' motion for summary judgment.  *Id.* at *10.

138.     On information and belief, the incident involving Whitehurst and the incident involving Plaintiff were part of a pattern of unreasonable conduct by MCTC officers that included an unreasonable failure to protect inmates from assault by their cellmates.

139.     Consistent therewith, it was well known within MCTC that certain correctional officers, including Defendant Crites, had a reputation for disregarding the constitutional rights of MCTC inmates.

140.     Defendants Morris and/or Lohman occupied the role of Chief of Security at MCTC in the time period immediately preceding the assaults on Mr. Whitehurst and Mr. Diven.

141.     As Chief of Security, Defendants Morris and Lohman would have been responsible for holding subordinate correctional officers accountable for misconduct.

142.     As Chief of Security, Defendants Morris and Lohman also would have supervised Defendants Souders, Crites, and Swope, as well as the correctional officers involved in the Whitehurst incident.

143.     On information and belief, Defendants Morris and/or Lohman had actual knowledge of their subordinates' misconduct by reviewing prison grievances, incident reports, and reports of internal investigations.

144.     On information and belief, Defendants Morris and/or Lohman had constructive knowledge of their subordinates' misconduct.

145.     Defendants Morris and/or Lohman acted unreasonably by failing to adequately discipline MCTC corrections officers who wrongfully failed to protect inmates from violence.

146.    Defendants Morris's and/or Lohman's inadequate discipline created a culture of lawlessness and impunity at MCTC.

147.    On information and belief, correctional officers at MCTC, including those involved in the Diven and Whitehurst incidents, were inadequately trained in protecting inmates from attack by cellmates.

148.    On information and belief, Defendants Morris and/or Lohman were or should have become aware of deficiencies in their subordinates' training and unreasonably failed to take steps to correct these deficiencies, including, but not limited to, instituting formal training policies.

149.    Defendants Morris's and Lohman's unreasonable failure to supervise their subordinates constituted deliberate indifference to the safety and constitutional rights of MCTC's inmates.

150.    Defendants Morris's and Lohman's deliberate indifference was the driving force behind Plaintiff's constitutional injuries.

**Count VIII**
(Failure to Train, 42 U.S.C. § 1983)
(Defendants Moore, Liebno, Martin, Harvey, and Jackson)

151.    Plaintiff hereby adopts and incorporates by reference the allegations contained in all of the paragraphs of his complaint as if set forth fully herein.

152.    Officer Crites' and Officer Souders' failure to protect Plaintiff from Mr. Hammonds' assault was directly and proximately caused by DPSCS's failure to conduct sufficient entry-level and in-service training for Maryland correctional officers.

153.    In particular, Officer Crites and Officer Souders lacked adequate training in methods of intervening in inmate-on-inmate altercations, including, but not limited to:

a.  Safely removing an inmate from his cell when there is a credible threat of violence against that inmate; and

b.  Disarming or disabling an assailant from outside of a locked cell, including through the use of verbal commands, chemical agents, and handcuffing.

154.  Defendants Moore, Liebno, Martin, Harvey, and Jackson, as DPSCS officials in charge of overseeing correctional facilities, correctional training, and correctional standards, have the responsibility to ensure proper training is in place for all Maryland correctional officers.

155.  Defendants Moore, Liebno, Martin, Harvey, and Jackson, as DPSCS officials in charge of overseeing correctional facilities, correctional training, and correctional standards, have the authority to develop and implement standards and policies with respect to correctional training.

156.  Because Plaintiff remains incarcerated in a Maryland Correctional facility with a cellmate, DPSCS's failure to properly train its correctional officers on how to protect inmates from violence by cellmates represents a continuing and significant threat to Plaintiff's safety.

157.  On information and belief, Eastern Correctional Institution, where Plaintiff is incarcerated, suffers from the same, if not worse, deficiencies in training that exist at MCTC and other facilities in the Maryland prison system.

**PRAYER FOR RELIEF**

158.  Plaintiff respectfully requests that this Court enter judgment awarding him:

a.  nominal, consequential, punitive, and other money damages from all Defendants in their individual capacity in an amount to be proved at trial.

b.  pre- and post-judgment interest and costs;

c.  prospective injunctive relief, including, but not limited to, an order that Defendants in their official capacity improve correctional training by developing and instituting

formal training policies and programs on the subject of intervention by correctional officers in inmate-on-inmate assaults; and

        d.      all other relief that is just and proper.

159.    Plaintiff requests a trial by jury on each of the claims asserted above.

Dated: March 7, 2023

                                      Respectfully submitted,

                                      */s/ Edward Barnidge*

                                      Edward Barnidge (Bar No. 16069)
                                      Daniel N. Boger (pro hac vice)
                                      Jacob Burnett (pro hac vice)
                                      WILLIAMS & CONNOLLY LLP
                                      680 Maine Ave. S.W.
                                      Washington, DC 20024
                                      Tel.: (202) 434-5000
                                      Fax: (202) 434-5029
                                      ebarnidge@wc.com
                                      dboger@wc.com
                                      jburnett@wc.com

                                      *Counsel for Plaintiff*

**Certificate of Service**

I hereby certify that, on this 7th day of March, 2023, a true and correct copy of the foregoing **First Amended Complaint** was served via CM/ECF on all parties of record.


By:     /s/ *Edward Barnidge*

WILLIAMS & CONNOLLY LLP
680 Maine Ave. S.W.
Washington, DC 20024
Tel.: (202) 434-5000
Fax: (202) 434-5029
ebarnidge@wc.com

*Counsel for Plaintiff*