IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JUSTIN MICHAEL DIVEN**, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No. 1:21-cv-01276-BAH |
| **RUSSELL SOUDERS, et al.,** | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff, Justin Diven, filed the present lawsuit against Defendants, Russell Souders, J.B. Swope, and James Crites, alleging (1) failure to intervene or protect in violation of 42 U.S.C. § 1983; (2) denial of adequate medical care in violation of 42 U.S.C. § 1983; (3) failure to intervene or protect in violation of the Maryland Declaration of Rights, Articles 16 & 25; (4) denial of adequate medical care in violation of the Maryland Declaration of Rights, Articles 16 & 25; (5) assault; (6) intentional infliction of emotional distress; (7) supervisory liability under 42 U.S.C. § 1983; and (8) failure to train in violation of 42 U.S.C. § 1983 resulting from Plaintiff's assault at the hands of his cellmate while housed at the Eastern Correctional Facility ("ECI").[1] United States District Judge Hurson referred this case to the undersigned to resolve Plaintiff's pending Motion to Compel Defendants' Production of Documents and Supplementation of Interrogatory Responses (the "Motion"). *See* (ECF Nos. 83, 84, 85). The undersigned has considered the Motion, Defendants' opposition thereto, and Plaintiff's reply.[2] No hearing is necessary. *See* Loc.

---

[1] Although there are additional named defendants in this case, the present motion implicates only Defendants Souders, Crites, and Swope.

[2] Filed under seal, the Motion, opposition, and reply are collectively contained within ECF No. 84.

1

Rule 105.6 (D. Md. 2023). For the reasons that follow, Plaintiff's motion will be granted in part and denied in part.

I.  BACKGROUND

Plaintiff currently resides in Westover, Maryland, where he is incarcerated in the ECI. (ECF No. 44 at 5).[3] Defendants Souders, Crites, and Swope were employed as correctional officers with the Maryland Department of Public Safety & Correctional Services ("DPSCS") at all times relevant to Plaintiff's claims and oversaw Plaintiff at the ECI. According to Plaintiff, he was paired with a cellmate who is a member of the "Black Guerrilla Family" who allegedly repeatedly assaulted Plaintiff on or about March 7, 2020. *Id.* at 8. Despite informing Defendants of the ongoing assaults committed by his cellmate, Plaintiff's requests to be taken out of his cell were ignored—including Defendants allegedly watching first-hand as Plaintiff was assaulted— ultimately resulting in Plaintiff being treated for "documented wounds to Plaintiff's head, face, neck, and ribs." *Id.* at 8–11. Plaintiff requested additional medical treatment for lingering injuries and pain after his initial treatment, which were ignored by Defendants. *Id.* at 11–12. Plaintiff was subsequently treated for "multiple abrasions to forehead, neck and left side of trunk" before being prescribed pain medication. *Id.* at 13. Accordingly, Plaintiff filed the present action alleging that his assault and injuries were caused by or the result of Defendants' "negligence, gross negligence, violations of the Maryland declaration of rights, and violation of the United States Constitution." *Id.* at 14.

Specific to the undersigned's referral, Plaintiff seeks compulsion of various documents allegedly responsive to Plaintiff's previous requests for production of documents ("RFPDs")

---

[3] When the Court cites to a particular page or range of pages, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of each electronically filed document.

propounded on Defendants during discovery. Plaintiff also seeks compulsion of supplemental interrogatory answers for Defendants' supposedly insufficient responses thereto. Regarding the RFPDs, Plaintiff's counsel served Defendants with an initial set of RFPDs on June 5, 2023, making Defendants' responses due 30 days therefrom pursuant to Federal Rule of Civil Procedure 34(b)(2)(A), or July 5, 2023. (ECF No. 84 at 4). Defendants failed to respond to those requests until July 28, 2023, after Plaintiff granted Defendants two courtesy extensions (the first of which Defendants missed). *Id.* Defendants then served their responses and objections to Plaintiff's first set of RFPDs on July 28, 2023, but did not produce any documents responsive to those requests at that time. *Id.* Rather, Defendants made their first production of documents in response to Plaintiff's RFPDs on August 18, 2023, to which Defendants have supplemented periodically. *Id.* at 5. Plaintiff asserts that Defendant Crites' deposition shortly thereafter involved testifying "extensively to a variety of documents in [Defendants'] custody, possession, or control that are responsive to Plaintiff's RFPDs but were not produced in litigation." *Id.*

Plaintiff then served a letter identifying Defendants' alleged failures to produce responsive documents on August 31, 2023, following Crites' deposition. *Id.* Defense counsel, according to Plaintiff, did not respond by supplementing its document production, but instead demanded that Plaintiff identify the specific documents Plaintiff desired but Defendants had yet to produce. *Id.* Plaintiff subsequently served a second deficiency letter on September 22, 2023, detailing certain documents that Defendants "testified to as existing and being within their possession, custody, or control that had not yet been produced." *Id.* at 6. Defendants responded via letter on October 5, 2023, in which they again declined to produce certain documents Plaintiff believes to be responsive or that Defendants otherwise indicated were unavailable supposedly inconsistent with Defendants' deposition testimonies. *Id.*

3

Regarding interrogatories, Plaintiff served his first set of interrogatories on July 27, 2023, making Defendants' answers thereto due by August 26, 2023, pursuant to Federal Rule of Civil Procedure 33(b)(2). Defendants again failed to meet this discovery deadline but ultimately served their responses on September 14, 2023. *Id.* Plaintiff believes those responses to be insufficient, necessitating the current Motion along with the alleged RFPD deficiencies. Each alleged discovery deficiency is detailed below.

**II.   ANALYSIS**

    a.   <u>Ticket-Writing Policy (RFPD No. 3)</u>

Plaintiff's RFPD No. 3 requests "All Documents Related To any policy, procedure, or practice governing intervention in or resolution of physical altercations between inmates or threats of violence by one prisoner against another." (ECF No. 84 at 56–57). Relevant for purposes of the Motion, Plaintiff seeks Defendants' "ticket-writing policy" through RFPD No. 3, which "covers when a notice of disciplinary violation (known as a 'ticket') is to be written, how it is to be written, and what it is required to include." *Id.* at 6. Defendant(s) responded to RFPD No. 3 as follows:

> Defendant objects to this Request to the extent that it seeks documents outside the scope of this litigation, that are not proportional to the needs of the case, or that would not likely lead to the discovery of information or documents relevant to Plaintiff's claims or to any of Defendants' defenses. Defendant also objects to the extent that this Request seeks documents protected by the attorney client privilege, attorney work product, and documents prepared in anticipation of litigation. Subject to and without waiving these objections, this Defendant has no responsive documents in his possession or control at this time, but Defendant's counsel has requested copies of responsive documents from DPSCS and will produce non-privileged responsive documents.

*Id.* at 35.

The Court will overrule Defendants' objections to RFPD No. 3 and order production of the ticket-writing policy, assuming there is such a policy.  Defendants waived their objections because they raised them untimely.  *See Hall v. Sullivan*, 231 F.R.D. 468, 474 (D. Md. 2005) ("If a party fails to file *timely* objections to document requests, such a failure constitutes a waiver of any objections which a party might have to the requests . . . 'Any other result . . . would completely frustrate the time limits contained in the Federal Rules and give a license to litigants to ignore the time limits for discovery without any adverse consequences.'") (emphasis in original) (quoting *Scaturro v. Warren and Sweat Mfg. Co., Inc.*, 160 F.R.D. 44, 46 (M.D. Pa. 1995)); *Int'l Painters & Allied Trades Indus. Pension Fund v. Niles Indus. Coatings, LLC*, No. 1:20-CV-00619-RDB, 2023 WL 5368040, at *2 (D. Md. Aug. 22, 2023) ("Thus, courts have found that a failure to timely object to both interrogatories and [RFPDs] constitute a waiver of any such objections asserted at a later time.") (quotation omitted); Fed. R. Civ. P. 34(b).  Nor do Defendants assert that this response was timely.  Regardless of the waiver, though, Defendants' objections also lack substance.

First, the request is clearly within the scope of discovery since it relates to discipline for alleged infractions, which almost certainly would include the infractions alleged by Plaintiff's cellmate.  One of Plaintiff's main contentions in the case *sub judice* is that Defendants failed to properly intervene and respond to Plaintiff's alleged assault by another inmate.  Thus, Defendants' policies regarding how to properly handle physical altercations between inmates is relevant to Plaintiff's argument regarding whether Defendants met those standards or, more broadly, whether those standards and responses to Plaintiff's alleged assault were sufficient.

Second, Defendants present no factual basis for their boilerplate objection to "proportionality," giving the Court no basis to conclude that the request places any burden on Defendants, let alone one out of proportion to the important constitutional issues raised in this

case. Third, the objection that the request is unlikely to lead to the discovery of relevant information is just a rewording of the "scope" objection that the Court has previously found lacking.

Finally, Defendants' objections regarding privilege are unsupported because Defendants have set forth no specific facts demonstrating that such documents are protected under such privileges, either in their responses to RFPD No. 3 or their opposition to the Motion. *See Twin City Fire Ins. Co. v. AXIS Ins. Co.*, No. 1:22-CV-00769-BAH, 2023 WL 8600554, at *2 (D. Md. Dec. 11, 2023) ("In satisfying the [work product] burden, a party cannot rely on conclusory statements in its memoranda; rather, as in the case of attorney-client privilege, the proponent must provide specific factual support for its assertions.") (quotation omitted).

The Court also observes that an agreement to look for responsive documents "notwithstanding these objections" creates uncertainty for the Plaintiff and for the Court as to whether any responsive documents have been withheld based on the asserted objections. Defendants' statement that they "made a request for documentation of ticket-writing policy to DPSCS," which was then received and turned over to Plaintiff promptly, further compounds this confusion. (ECF No. 84 at 99). Defendants additionally contend that they obtained this information despite the documents not being within their possession or custody and that Plaintiff ultimately has no entitlement to further documentation regarding the ticket-writing policy pursuant to "Section 4-351(a)(3) of the General Provisions Article of the Maryland Code." *Id.*

The Court rejects the notion that the requested documents are not within Defendants' possession or control. This Court has clarified that "documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 515 (D. Md. 2009).

6

Defendants' concession that they have already retrieved and produced documents regarding ticket writing training sufficiently demonstrates that Defendants have the practical ability to obtain additional documents regarding the ticket writing policy, whether from the Maryland Correctional Training Center ("MCTC") or DPSCS, and the documents therefore are under Defendants' control for purposes of Rule 34.  *See* Fed. R. Civ. P. 34(a)(1).

Defendants' reliance on the Maryland Code is also misplaced.  Section 4-351(a)(3) of the General Provisions Article of the Maryland Code provides that "a custodian may deny inspection of . . . records that contain intelligence information or security procedures of the Attorney General, a State's Attorney, a municipal or county attorney, a police department, a State or local correctional facility, or a sheriff."  The Defendants have not laid any factual foundation to establish that the ticket-writing policy at issue would fall within the category of "intelligence information" or "security procedures."

      b.  <u>Training Materials (RFPD Nos. 6 and 7)</u>

Plaintiff next contends that Defendants "have testified extensively to various trainings they have received regarding how to resolve inmate-on-inmate altercations both at the academy before becoming a correctional officer and at annual trainings." (ECF No. 84 at 7).  Moreover, according to Plaintiff, "The Officers have testified that their trainings consisted of manuals, read and signs, PowerPoint slides, examinations (including both written questions and their Scantron sheets responding to the questions), study guides, and videos."  *Id.*  The specific language of the RFPDs requesting these documents and Defendants' responses thereto are as follows:

> REQUEST NO. 6: All documents related to your training records and certification as a correctional officer at the Maryland Correctional Training Center.

>RESPONSE TO REQUEST NO. 6: This Defendant has no responsive documents in his possession or control at this time, but Defendant's counsel has requested copies of responsive documents from DPSCS and will produce non-privileged responsive documents.
>
>REQUEST NO. 7: All documents related to your training related to intervening and resolving physical altercations between prisoners at the Maryland Correctional Training Center.
>
>RESPONSE TO REQUEST NO. 7: This Defendant has no responsive documents in his possession or control at this time, but Defendant's counsel has requested copies of responsive documents from DPSCS and will produce non-privileged responsive documents.

*Id.* at 99. Defendants nevertheless obtained and produced various training records from DPSCS (further demonstrating Defendants' control of the materials under Rule 34), which Defendants title as "Training-Legal Aspects," "Training-Security," "Lesson Plan: Use of Force Survival," and "Use of Force Procedures Manual." *Id.* at 100. Yet Defendants testified to also reviewing training materials covering the use of force and intervening in inmate-on-inmate altercations (*id.* at 71–72); recurring yearly training videos (*id.* at 72–73); written examinations (*id.*); and PowerPoint training presentations (*id.* at 75). Plaintiff additionally contends that Defendants testified regarding "being trained regarding the number of officers required to be present at a cell before extracting an inmate," "read and signs," and "study guides" pursuant to the above trainings. *Id.* at 7. Although Plaintiff does not provide the deposition transcripts for Defendants testifying to the materials in the preceding sentence, Defendants do not contest in their opposition that such materials were used in training Defendants as Plaintiff suggests.

The materials referenced in Defendants' deposition(s) surely fall within the scope of RFPD Nos. 6 and 7, to which Defendants also do not object. The issue is thus ultimately one of whether Defendants have produced *all* documents responsive to those requests. The Court cannot compel Defendants to provide what they do not have, or, in this case, cannot obtain from non-parties such

8

as MCTC or DSPCS. However, the Court will compel Defendants to continue to review their productions pursuant to RFPD Nos. 6 and 7 and supplement those productions accordingly. To the extent that Defendants have responsive documents in their immediate possession or custody detailing the above materials cited by Defendants in their deposition(s), Defendants are ordered to produce those documents within fourteen (14) days from the date of this Memorandum Opinion and Order. To the extent that Defendants do not have such responsive documents in their immediate possession or custody, Defendants shall request those documents from the appropriate non-party—whether MCTC, DPSCS, or another—within fourteen (14) days from the date of this Memorandum Opinion and Order and subsequently provide to Plaintiff any documents received pursuant to those requests within fourteen (14) days therefrom.

### c. Administrative Remedy Procedure ("ARP") Reports and Standards of Conduct Documents (RFPD No. 8)

Plaintiff's RFPD No. 8 and Defendants' response thereto reads:

**REQUEST NO. 8:** All documents related to any complaint, allegation, report, investigation, inquiry, reprimand, discipline, or lawsuit against you related to your conduct as a law correctional officer. This includes, without limitation, all complaints of failing to protect inmates from violence or threats of violence, abuse of authority, falsifying documents, dishonesty, or misconduct of any kind.

**RESPONSE TO REQUEST NO. 8:** This Defendant has no responsive documents in his possession or control at this time, but Defendant's counsel has requested copies of responsive documents.

(ECF No. 84 at 101). Plaintiff seeks all ARP reports filed against Defendants Souders, Crites, and Swope during their employment at MCTC and "documents described in Defendant Crites' deposition as 'standards of conduct in internal disciplinary processes'" pursuant to RFPD No. 8.

9

*Id.* at 8–9.[4] Defendants objected to these requests in their October 5, 2023, letter as being either overly broad, unduly burdensome, irrelevant, or outside the scope of RFPD No. 8. *Id.* at 60, 101. Nevertheless, Defendants also informed Plaintiff that Defendants "inquired into the existence of any ARP records relating to any complaint referenced in Defendants' Disciplinary Files and are producing any responsive ARP records that are received." *Id.* at 60. Moreover, Defendants maintain that they ultimately obtained and produced documents on standards of conduct for correctional officers despite their objection that such documents fell outside the scope of RFPD No. 8 as well as the complete disciplinary files of Defendants Souders, Crites, and Swope. *Id.* at 101.

Plaintiff does not contest that he ultimately received the standards of conduct documents. The Court will therefore deny Plaintiff's Motion as to that issue. Regarding the ARP reports, the Court finds that, although Defendants have largely waived their objections to this request for the reasons previously explained, Plaintiff's request for all ARP reports filed against Defendants during their entire employment does not meet the relevance standards of Rule 26 and is disproportional to the needs of the case. Defendants highlight that, pursuant to the Code of Maryland Regulations 12.02.28.04, all ARP reports are handwritten, indexed and maintained under the names of the complainants (rather than under the names of correctional officers), and that searching the ARP reports during Defendants' entire employment would entail manual review of anywhere from 1,000 to 1,500 complaints each year totaling approximately 15,000 pages of handwritten notes. *Id.* at 60–61. Notably, Defendants also assert that "ARPs naming an individual officer could be readily located only by reference to the officer's personnel file." *Id.* at 103. Sifting through the voluminous amount of handwritten complaints is unduly burdensome in light of

---

[4] "'Administrative remedy procedure' means the procedure established by the Commissioner [of Correction] for inmate complaint resolution." Md. Code Regs. 12.07.01.01.

Defendants' production of Defendants' entire personnel files which purportedly include records of all disciplinary actions and "verbal warnings" Defendants have received. *Id.* at 101. Thus, to the extent that Defendants have inquired into the existence of any ARP records related to any complaint referenced in Defendants' disciplinary files, Defendants shall continue to do so on an ongoing basis. However, the Court will not compel Defendants to scan the entire ARP records database for complaints that would otherwise be referenced in the officers' personnel files which Plaintiff already received. *See Hall*, 231 F.R.D. at 474 (noting that "a court has broad discretion to decide on a case by case basis whether waiver is appropriate," considering factors such as "whether the document production request was properly framed and not excessively burdensome" and "whether waiver would impose an excessively harsh result on the defaulting party"). Nor will it require Defendants to produce the standards of conduct documents which it already produced.

    d. <u>Documents Used or Referred to in Responding to Plaintiff's Interrogatories (RFPD No. 11)</u>

Plaintiff next seeks documents allegedly withheld by Defendants responsive to RFPD No. 11: "All documents used or referred to in responding to Plaintiff's interrogatory requests." (ECF No. 84 at 8). Plaintiff does not specify in his Motion or reply which documents he believes Defendants to be withholding other than asserting that "Defendants cite to a document spanning two pages that forms the basis for their interrogatory responses" without providing any more details or context. *Id.* at 934. Defendants nevertheless respond that "All requested documents have been produced" and that Defendants will "formally supplement" their response to RFPD No. 11 with "the document referred to by Defendants in responding to Plaintiff's interrogatory requests." *Id.* at 104. Without more specific argumentation from Plaintiff, and noting Defendants' representation that it will formally supplement its interrogatory responses, the Court denies Plaintiff's request on this issue. *See Barnes v. District of Columbia*, 289 F.R.D. 1, 6 (D.D.C. 2012)

("[T]he party seeking to compel discovery has the burden of proving that a discovery response is inadequate.").

      e.   Supplemental Responses to Interrogatories

Finally, Plaintiff requests the full names of three officers that Souders referenced in his deposition as "responding to [Plaintiff's] call for assistance in handling the attack against Plaintiff" named "Ambrose, Ruth, and Wilson" that Defendants allegedly failed to produce. (ECF No. 84 at 9). These names were already provided by Defendants in their response to interrogatory No. 14:

> **Interrogatory No. 14**: Identify all of the correctional officers that you worked with on your shift(s) on March 7, 2020 and March 8, 2020.
>
> **Answer to Interrogatory No. 14**: Defendant objects to this Interrogatory on the grounds that it does not specify the location at which the correctional officers about whom Plaintiff inquires worked. Defendant further objects to the request for information regarding correctional officers who worked on this Defendant's shift on March 8, 2020, on the grounds that the requested information is not relevant and is not likely to reveal any information which is relevant to a claim or defense in this action. Without waiving these objections, the correctional officers who worked in the same housing unit as this Defendant on the 4-12 shift on March 7, 2020, were Lieutenant Wayne Rudisill, COII Delbert Nicewarner, COII James Crites, COII Christopher Ferraro, COI Eugan Black, *COII Samuel Wilson, COII Nicholas Ambrose, and COII Christopher Ruth*. Defendant will supplement this answer if he learns of any additional correctional officers who worked in the same housing unit as this Defendant on the 4-12 shift on March 7, 2020. *Id.*

*Id.* at 105–06 (emphasis added). Plaintiff's request is therefore denied.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel is GRANTED in part and DENIED in part. Specifically, Defendants are ordered to produce the following within fourteen (14) days from the date of this Memorandum Opinion and Order:

1. All documents responsive to Plaintiff's RFPD No. 3 not already produced, namely, all documents related to Defendants' ticket-writing policy, assuming one exists;

2. Training materials including manuals, read and signs, PowerPoint slides, examinations, study guides, and videos regarding the various trainings Defendants received regarding how to resolve inmate-on-inmate altercations both at the academy before becoming a corrections officer and at annual trainings which Defendants testified to during their depositions which have not already been produced by Defendants;

3. To the extent that Defendants have inquired into the existence of any ARP records related to any complaint referenced in Defendants' disciplinary files, any ARP records received pursuant to those inquiries; and

4. Any formal supplementations to Plaintiff's RFPD No. 11 as referenced above that have not already been produced.

Date: January 17, 2024                              /s/
                                        J. Mark Coulson
                                        United States Magistrate Judge