**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| | * |
| JUSTIN MICHAEL DIVEN, | |
| | * |
| Plaintiff, | |
| | * |
| v. | |
| | *          Civil No. 21-1276-BAH |
| RUSSELL SOUDERS, ET AL. | |
| | * |
| Defendant. | |
| | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>MEMORANDUM OPINION</u>

Justin Michael Diven ("Plaintiff") commenced the present civil rights suit pro se, alleging that correctional officers failed to protect him from being assaulted by his cellmate while he was incarcerated at the Maryland Correctional Training Center ("MCTC") in Hagerstown, Maryland. ECF 1.[1]  Upon appointment of counsel, Plaintiff filed a first amended complaint in which he brought additional counts against numerous other officials within the MCTC based on a theory of supervisory liability.  ECF 44.

Before the Court is a motion to dismiss, or in the alternative for summary judgment, brought by the Defendants seeking dismissal of Counts V, VII, and VIII of the Amended Complaint.  ECF 65.  The motion includes a memorandum of law and exhibits.  *See* ECF 75.[2]  The Court has reviewed all relevant filings, including Plaintiff's response in opposition, ECF 76, and

---

[1] The Court references all filings by their respective ECF numbers.

[2] Defendants' memorandum appears to have been filed numerous times.  *See* ECFs 65-1, 66-1, 75. For convenience the Court cites to only ECF 75 when referring to Defendants' memorandum in support of Defendants' motion to dismiss at ECF 65.

Defendants' reply, ECF 79.  The Court finds that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2023).  Accordingly, for the reasons stated below, Defendants' Motion is **GRANTED**.

## I.    BACKGROUND

### A.    Statement of Facts

Plaintiff alleges that on March 7, 2020, he was subjected to a severe and prolonged assault by his cellmate, Devonte Hammonds ("Hammonds"), at the MCTC.  ECF 44 ¶ 1.  At approximately 8:30 p.m. on March 7, 2020, Plaintiff alleges Hammonds threatened him and demanded that Plaintiff leave the cell.  ECF 44 ¶ 31.  Plaintiff is a white man, and he alleges that Hammonds is a member of a gang with a reputation within the MCTC of being violent, particularly towards white inmates.  *Id.* ¶ 30.

Hammonds then began to punch Plaintiff with a closed fist, ordering Plaintiff to kick the door of his cell until guards took Plaintiff out of the cell.  *Id.* ¶ 32.  Plaintiff alleges Hammonds continued to assault him whenever Plaintiff became too fatigued to continue kicking the door.  *Id.* ¶ 34.  After ten to fifteen minutes of kicking, Officer Souders appeared outside of Plaintiff's cell. *Id.* ¶ 35.  Plaintiff told Officer Souders that Plaintiff needed to be taken out of his cell because Plaintiff and Hammonds were going to fight, and Hammonds was going to hurt Plaintiff.  *Id.* ¶ 36. Plaintiff stuck one of his hands out of the food slot in his cell door.  *Id.* ¶ 37.  Officer Souders then threatened to mace Plaintiff if he did not bring his hand back into his cell.  *Id.* ¶ 38.  Officer Souders refused to remove Plaintiff from the cell at that time and walked towards the guard's station, about twenty-five feet away.  *Id.* ¶ 39.

Plaintiff continued to kick his door and after approximately five minutes, Officer Souders and Officer Crites appeared together outside of Plaintiff's cell.  *Id.* ¶ 41.  Plaintiff again told the officers he was in danger of further assault and needed to be removed from his cell.  *Id.* ¶ 42.

Plaintiff alleges that Officers Souders and Crites observed Hammonds swinging his fist at Plaintiff. *Id.* ¶ 43.

Plaintiff then alleges that Officers Souders and Crites installed a plexiglass cage above Plaintiff's cell door, in order to muffle the sound of Plaintiff being kicked and to prevent the spread of fluids outside the cell that may result from the assault.  *Id.* ¶¶ 44–45.  After installing the plexiglass cage, Officers Souders and Crites left Plaintiff's cell and Hammonds continued to punch and kick Plaintiff whenever Plaintiff was unable to continue kicking his cell door.  *Id.* ¶¶ 46–47.

Approximately fifteen minutes later, Officers Souders and Crites returned to Plaintiff's cell door, and Plaintiff alleges they observed Hammonds punching Plaintiff in the head.  *Id.* ¶ 49. Plaintiff alleges that after one minute, Officer Crites asked Officer Souders, "Is [Plaintiff] bleeding yet?"  *Id.* ¶ 51.  The Officers then watched Plaintiff be assaulted for two to four more minutes before intervening.  *Id.* ¶ 52.  A third officer (whose identity is currently unknown) arrived, and at that point Officer Souders ordered Hammonds to stop assaulting Plaintiff.  *Id.* ¶ 53.  Hammonds complied.  *Id.* ¶ 54.

The guards then began to handcuff Plaintiff through the slot of the cell door.  *Id.* ¶ 55. Approximately one minute later they handcuffed Hammonds as well and took both Plaintiff and Hammonds to the medical unit.  *Id.* ¶ 57.

Plaintiff was examined by the MCTC medical unit, which documented wounds to Plaintiff's head, face, neck, and ribs, and prescribed pain medication.  *Id.* ¶ 58.  At the time he was examined by the medical unit, Plaintiff alleges he felt slight rib irritation as well as knots on his head, forehead, neck, and jaw.  *Id.* ¶ 59.  Afterwards, Plaintiff was taken from the medical unit to a new cell with a different cellmate.  *Id.* ¶ 60.

Approximately fifteen minutes after being released from the medical unit, Plaintiff alleges he began to feel substantial additional pain in his ribs and he began to experience difficulty breathing. *Id.* ¶ 61. Plaintiff also felt a gurgling sensation in his ribs that he thought was internal bleeding. *Id.* These symptoms were new and caused Plaintiff to panic, cry, and sweat. *Id.*

Approximately twenty minutes after arriving in his new cell, Officer Crites ordered Plaintiff to move to another cell. *Id.* ¶ 62. Plaintiff says he told Officer Crites that he was unable to move because of the pain and asked to be returned to the medical unit. *Id.* ¶¶ 63–64. Officer Crites allegedly refused and threatened to mace Plaintiff if he did not move to a new cell. *Id.* ¶ 65. Plaintiff's new cellmate helped him move out of the cell to a third cell, the farthest cell down the hall from the guard's station. *Id.* ¶ 67.

Plaintiff alleges he continued to have "severe pain and difficulty breathing, and asked the inmates in surrounding cells to bang on their cell doors to get the guards' attention." *Id.* ¶ 68. Officer Crites arrived at Plaintiff's cell and again refused to take Plaintiff to the medical unit, stating, "You should've told medical [before]." *Id.* ¶ 69. Plaintiff tried to get the attention of two additional unknown correctional officers, each of whom ignored Plaintiff. *Id.* ¶ 71. Plaintiff alleges that Officer Crites told the correctional officers on the next shift that Plaintiff had already received medical care and instructed them not to take Plaintiff back to the medical unit. *Id.* ¶ 73. Plaintiff tried to get the attention of two additional correctional officers on the next shift, each of whom ignored Plaintiff. *Id.* ¶ 74. Plaintiff asked another officer, Officer Swope, to take him to the medical unit due to his difficulty breathing and Officer Swope allegedly responded by saying, "They told me about you; you're beat." *Id.* ¶ 75.

The next morning, a shift sergeant took Plaintiff to the medical unit, which conducted a physical examination of Plaintiff's ribs. *Id.* ¶ 77. Plaintiff reported pain of 9/10 on the numeric

scale.  *Id.*  Plaintiff had "multiple abrasions to forehead, neck and left side of trunk" and the nurse examining Plaintiff noted "diminished" lung sounds due to "poor inspiration."  ECF 20-5, at 3.  The doctor prescribed pain medication and scheduled an x-ray of Plaintiff's ribs, which was conducted five days later and was negative for broken ribs.  ECF 44 ¶¶ 79–80.  Plaintiff was again prescribed pain medication on March 13, 2020, and felt pain for "at least thirty days after the assault."  *Id.* ¶ 80.

Plaintiff alleges he suffered numerous injuries as a result of the events of March 7, 2020, including: "(a) welts, abrasions, and bruises to head, face, neck, and ribs, (b) severe emotional and psychological trauma, including post-traumatic stress disorder, (c) fear of death, (d) fear and distrust of correctional officers and cellmates, (e) recurring nightmares of being attacked and abandoned, (f) difficulty sleeping, (g) pain and suffering, (h) embarrassment, and (i) inconvenience."  *Id.* ¶ 83.

### B.    Procedural History

On May 24, 2021, Plaintiff filed a pro se complaint.  ECF 1.  Plaintiff's initial complaint included the above factual allegations regarding the assault on March 7, 2020, and the delay in providing medical treatment.  *Id.* at 3.  Plaintiff's initial complaint named three correctional officers employed at MCTC: Correctional Officers Russell Souders[3] ("Souders"), S.B. Swope ("Swope"),[4] and James Crites ("Crites" and, collectively, "Correctional Officer Defendants").  *Id.*

---

[3] When Plaintiff originally filed his pro se complaint, he spelled Officer Souders' name as "Sanders," but the spelling was corrected to "Souders" by Order of this Court dated October 14, 2021.  ECF 13, at 1.

[4] Following Plaintiff's identification of Officer S.B. Swope as one of the "John Doe Correctional Officers" described in Plaintiff's initial pro se complaint, the Court ordered that the docket be amended to add Officer S.B. Swope as a Defendant.  *See* ECFs 13 and 14, at 1.  The Court Clerk is directed to modify the captioning of this case from "J.B. Swope" to "S.B. Swope."

at 1.  His claims revolved around the Correctional Officer Defendants' failure to protect him from an assault and failure to take him to receive medical treatment.  *Id.* at 3.

The Correctional Officer Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment.  ECF 20.  This Court's Memorandum Opinion and Order granted in part and denied in part the Correctional Officer Defendants' Motion, dismissing Plaintiff's claims against the Correctional Officer Defendants in their official capacities.  ECFs 25 and 26.

After the Court appointed pro bono counsel, Plaintiff filed a first amended complaint.  ECF 44.  Plaintiff's amended pleading names as defendants the original three Correctional Officer Defendants, in their individual capacities, and adds a claim of supervisory liability against former MCTC Security Chief George J. Morris ("Morris") and current MCTC Security Chief Joseph R. Lohman ("Lohman," and collectively "Supervisory Defendants"), in their individual capacities. *Id.*

Plaintiff also added a claim for failure to train against various officials within the Maryland Police and Correctional Training Commission ("MPCTC"), including: Executive Director of the Maryland Commission on Correctional Standards ("MCCS") Veronica Moore ("Moore"); Executive Director of the MPCTC, Albert Liebno ("Liebno"); Director of Correctional Training for the Department of Public Safety and Correctional Services ("DPSCS") and member of MPCTC, Thomas P. Martin ("Martin"); and Assistant Director of Correctional Training for the DPSCS and member of the MPCTC, Violet Jackson ("Jackson" and collectively "MPCTC Defendants").  *Id.* ¶¶ 23–27.  Finally, Plaintiff added the former Commissioner of the DPSCS, Annie Harvey ("Harvey").  *Id.* ¶ 27.  Both Harvey and the MPCTC Defendants were sued in their official capacities (collectively the "Official Capacity Defendants").  *Id.* ¶¶ 23–27.

Counts I, II, III, and IV of the Complaint claim violations of the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and comparable Articles of the Maryland Declaration of Rights.  No. 44 ¶¶ 86–112.  Counts I and III are brought against Defendants Souders and Crites in their individual capacities, claiming failure to intervene.  *Id.* ¶¶ 86–95, 104–07.  Counts II and IV are brought against Defendants Crites and Swope in their individual capacities, claiming denial of adequate medical care.  *Id.* ¶¶ 96–103, 108–12.  Count V is an assault claim against Defendants Souders and Crites.  *Id.* ¶¶ 113–20.  Count VI claims intentional infliction of emotional distress against the three Correctional Officer Defendants.  *Id.* ¶¶ 121–28.  Count VII claims supervisory liability under 42 U.S.C. § 1983 against Defendants Morris and Lohman in their individual capacities.  *Id.* ¶¶ 129–50.  Count VIII claims a failure to train under 42 U.S.C. § 1983 against the Official Capacity Defendants, *i.e.*, the MPCTC Defendants and Defendant Harvey, in their official capacities.  *Id.* ¶¶ 151–57.

Plaintiff seeks monetary damages against Defendants who are sued in their individual capacities (Correctional Officer Defendants, *id.* ¶¶ 18–20; Defendant Morris, *id.* ¶ 21; and Defendant Lohman, *id.* at ¶ 22).  Plaintiff seeks prospective injunctive relief against the Official Capacity Defendants (the MPCTC Defendants, *id.* at ¶¶ 23–26, and Defendant Harvey, *id.* ¶ 27).  *Id.* ¶ 158.

Defendants now move to dismiss Counts V, VII, and VIII of the Complaint or, in the alternative, for summary judgment in their favor on those Counts.

## II.   LEGAL STANDARD

Under Rule 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the

plaintiff." *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (noting that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief"). "The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

"[A] plaintiff need not include 'detailed factual allegations' in order to satisfy Rule 8(a)(2)." *Jordan v. Davis*, Civ. No. ELH-22-1541, 2023 WL 2478862, at *3 (D. Md. Mar. 13, 2023) (citing *Twombly*, 550 U.S. at 555). "Moreover, federal pleading rules 'do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.'" *Id.* (citing *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam)). "But, mere ''naked assertions' of wrongdoing' are generally insufficient to state a claim for relief." *Id.* (citing *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted)). "In other words," Judge Hollander has cogently noted, "the rule demands more than bald accusations or mere speculation." *Id.* (citations omitted).

In deciding a motion to dismiss, the Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).  A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted).

Finally, when presented with a motion to dismiss or, in the alternative, a motion for summary judgement, the disposition of the motion "implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 625 (D. Md. 2020).  "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

In this case, Defendants' Motion is styled as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56.  The Court exercises its discretion to consider Defendants' Motion as a motion to dismiss under Rule 12(b)(6).  *Pevia*, 443 F. Supp. 3d at 625.

## III.   ANALYSIS

### A.   Count V: Assault

Defendants' Motion seeks dismissal of Count V (Assault) against Defendants Souders and Crites, alleging that Plaintiff's assault claim is barred by the applicable statute of limitations for assault claims under Maryland law.  ECF 75, at 4.

Defendant's assault claim against Souders and Crites relates to their threats to mace Plaintiff after he placed his hands through the slot and after he refused to move cells.  ECF 44 ¶¶ 114, 117.  Plaintiff alleges these threats put Plaintiff in "apprehension of [imminent] harmful or offensive contact."  *Id.* ¶¶ 115–16, 118–19.  Defendants argue that this assault claim is untimely.  ECF 75, at 13–14.  Under Maryland law, an assault claim must be filed within one year from the date it accrues.  *See* Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 5-105 (2020 Repl. Vol.).  Here, the alleged assault occurred on March 7, 2020, and any claim based on such assault would have needed to have been filed by March 7, 2021, to comply with CJP § 5-105.  Plaintiff's original complaint was filed on May 24, 2021, more than one year after the incident.  *See* ECF 1.  Additionally, the original complaint did not include assault allegations or the facts alleging the threat of macing Plaintiff; these allegations were only included in the amended complaint filed on March 7, 2023, three years after the assault.  ECF 75, at 13; ECF 1, at 3–4.

Plaintiff concedes that Count V is barred by Maryland's statute of limitations.  ECF 76, at 11.  Accordingly, Count V against Souders and Crites is dismissed.

### B.    Count VII: Supervisory Liability

Next, Defendants argue that Plaintiff's claim of supervisory liability under § 1983 against Supervisory Defendants in their individual capacities fails as a matter of law, both because Plaintiff failed to state a claim for relief and because Supervisory Defendants are entitled to qualified immunity.  ECF 75, at 18–21.  The Court agrees that Plaintiff has failed to state a claim for relief and thus dismissal is warranted on that ground.[5]

---

[5] Plaintiff's complaint alleges the Supervisory Defendants demonstrated deliberate indifference to the safety and constitutional rights of MCTC inmates by failing to properly train or reprimand correctional officers who allowed violence between inmates.  ECF 44 ¶ 149.  The parties only discuss qualified immunity in general, without any focus on the specific claim of deliberate indifference that the Court discusses below.  ECF 75, at 18–19; ECF 76, at 20–21.  Given that the factual allegations undergirding plaintiff's claim against the Supervisory Defendants are legally

It is well-established "that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (citations omitted).  However, "[l]iability in this context is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.* (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978) and *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir.1980)).

The Fourth Circuit has "set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (numerous citations omitted).

To establish the first element, "a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Id.* (citing *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)).  As to the last of these elements, "the injury or substantial risk of injury" must be "more than de minimis." *See Robles v. Prince George's Cnty.*, 302 F.3d 262, 269

---

insufficient, the Court finds no need at this time to address the merits of their assertion of qualified immunity.

(4th Cir. 2002); *Thompson*, 878 F.3d at 98 ("[A] prisoner who suffers a minor, but malicious, injury may . . . not [prevail] on a deliberate indifference claim.").

As a threshold matter, the Court rejects the Supervisory Defendants' apparent argument that Plaintiff suffered de minimus injuries. *See* ECF 75, at 5–6. Plaintiff alleges: "(a) welts, abrasions, and bruises to head, face, neck, and ribs, (b) severe emotional and psychological trauma, including post-traumatic stress disorder, (c) fear of death, (d) fear and distrust of correctional officers and cellmates, (e) recurring nightmares of being attacked and abandoned, (f) difficulty sleeping, (g) pain and suffering, (h) embarrassment, and (i) inconvenience." ECF 44 ¶ 83.

Defendants dispute the accuracy of these allegations based on the medical reports. ECF 20-5, at 2–3. These reports, though referenced in Plaintiff's complaint, are not "integral" to Plaintiff's claim (*i.e.*, their very existence does not give rise to the rights asserted herein). The Court declines to weigh their probative value at this time, as the Court has opted to consider the present motion under the 12(b)(6) standard. *See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (explaining a document is "integral" when "its very existence, and not the mere information it contains, gives rise to the legal rights asserted" (internal citation and quotation marks omitted)).

Furthermore, even if Plaintiff's physical injuries were more superficial, as Defendants assert, emotional and psychological injuries can be enough to constitute a substantial injury that satisfies this prong. For instance, in *Robles* the Fourth Circuit recognized that the mental and emotional distress caused by police officers tying a plaintiff to a metal pole in an abandoned parking lot for ten minutes was more than "de minimis" as "any reasonable person would have been upset by what happened here." 302 F.3d at 270. This was true even though the plaintiff's injuries in that case were almost exclusively psychological. *Id.* The same logic applies here.

Accepting Plaintiff's allegations as true, any reasonable person would have been upset by having their pleas for help ignored when housed with a violent cellmate who continued to assault them for forty minutes. So too, any reasonable person would have been upset that their delayed onset pain, which made it difficult for them to breathe, was discounted for hours by numerous officials on numerous shifts.

This does not, however, end the discussion. To establish "a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Shaw*, 13 F. 3d at 799. (citing *Slakan,* 737 at 373–74). This is a "heavy burden." *Id.* "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted). As the *Slakan* Court noted, a litigant alleging supervisory liability must point to more than "a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities." *Slakan*, 737 F. 2d at 373. "Nor can [a supervisor] reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id.* With this standard in mind, even accepting that Plaintiff suffered substantial harm, he has not successfully pleaded liability on the part of Supervisory Defendants.

The allegations against the Supervisory Defendants in Count VII rest entirely on the theory that they "failed to train and supervise their subordinate correctional officers." ECF 44 ¶ 130. However, the complaint fails to specifically allege facts reflecting that Supervisory Defendants are responsible for designing and implementing training for their subordinate officers. *Cf.* ECF 44 ¶

141–42 (expressly alleging Supervisory Defendants are responsible only for supervising and "holding subordinate correctional officers accountable for misconduct"); ECF 44 ¶ 154 (alleging Defendants Moore, Liebno, Martin, Harvey, and Jackson—the Official Capacity Defendants rather than the Supervisory Defendants—were responsible for developing trainings for correctional officers). While Plaintiff repeatedly alleges that the Supervisory Defendants failed to train correctional officers, this is a legal conclusion that the Court need not accept as true in evaluating a motion to dismiss. *See Ashcroft*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

As for the alleged failure to properly *supervise* their subordinate officers, the only factual allegations that the Supervisory Defendants possessed the requisite knowledge that Plaintiff faced a substantial harm come from the alleged occurrence of an unrelated assault two weeks earlier, on February 23, 2020, involving different inmates and different correctional officers.[6] ECF 44 ¶¶ 133–43. Plaintiff asserts that Supervisory Defendants review prison grievances, incident reports, and reports of internal investigations and thus had "constructive knowledge" of that earlier assault, *id.* ¶ 144, but failed to discipline the officers involved in that incident, creating "a culture of lawlessness and impunity at MCTC," *id.* at ¶ 146. Even assuming the temporal proximity of the earlier assault to the incident involving Plaintiff is sufficient to infer actual knowledge on the part of the Supervisory Defendants, that the assaults were close in time to one another is still insufficient to infer deliberate indifference.

---

[6] Plaintiff asserts that the officers involved in the other incident were not the same the officers who involved in the incidents alleged here. ECF 44, at 20, ¶ 132 (citing *Whitehurst v. Dovey*, No. GJH-20-484, 2022 WL 952027, at *8 (D. Md. Mar. 30, 2022)).

One prior incident, even one involving different officers, is not enough to constitute the "history of widespread abuse" required to give rise to supervisory liability for the acts of subordinates. *Wellington*, 717 F.2d at 936. The Fourth Circuit has explicitly cautioned against suits making similar allegations, since "a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities" and similarly" cannot "reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Slakan*, 737 F.2d at 373. While Plaintiff attempts to evade *Slakan*'s clear directive against liability in this context by vaguely alleging a lack of training and raising the claim that the one prior incident made the Supervisory Defendants on notice that they should anticipate non-compliance on the part of other subordinates, the complaint fails to allege that "the need for training with respect to the subordinate's conduct was 'plainly obvious.'" *DeHaven v. W. Va. Div. of Corr.*, Civ. No. 2:14-16156, 2014 WL 2765612, at *4 (S.D.W. Va. June 18, 2014) (citation omitted).

Even if one prior incident was enough to establish a "history of widespread abuse" required to maintain a claim for supervisory liability, Plaintiff fails to allege how the prompt discipline of the officers involved in the otherwise unrelated February 23 incident—even if such swift disciplinary action was even possible—would have prevented the March 7 incident. Instead, Plaintiff makes a more general allegation that the failure to discipline the officers from the earlier incident "created a culture of lawlessness and impunity at MCTC." ECF 44 ¶ 146. However, this "bare assertion . . . fail[s] to constitute well-pled facts for 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). More is required to allege deliberate indifference, particularly when the Supreme Court has long recognized that prison officials may avoid liability even if their reasonable efforts at

maintaining a safe environment for prisoners fails to actually prevent future harm. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

Further, even if the Court were to assume that the Supervisory Defendants knew of prior misconduct by their subordinates, the Supreme Court explicitly rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Iqbal*, 556 U.S. at 677. Instead, "in order to state a claim for supervisory liability, 'a plaintiff must plead that *each* [supervisory] defendant, through the official's *own individual actions*, has violated the Constitution.'" *Evans v. Chalmers*, 703 F.3d 636, 660–61 (4th Cir. 2012) (Wilkinson, J., concurring) (emphasis and alteration in *Evans*) (quoting *Iqbal*, 556 U.S. at 676). Even assuming the Supervisory Defendants were aware of the earlier assault, "[P]laintiff has failed to allege any facts demonstrating that defendants had even 'mere knowledge' that any subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to [P]laintiff, let alone that they were indifferent to or tacitly approved it." *Jordan*, 2023 WL 2478862, at *13. Thus, while the Court is obliged to view all facts and all reasonable inferences in favor of the Plaintiff, *Hous. Auth. of the City of Columbia*, 58 F.4th at 177, finding supervisory liability based on the allegations here is unreasonable, and Supervisory Defendants' motion to dismiss Count VII is granted.[7] However, this dismissal as to

---

[7] As the Court finds Plaintiff has failed to properly plead claims against all Supervisory Defendants, the Court need not reach the parties' dispute over Defendant Morris and whether his alleged retirement prior to the events in this case precludes him from liability. *See* ECF 75, at 21; ECF 76, at 11 n.2.

the Supervisory Defendants will be without prejudice and with leave to amend, as requested by Plaintiff.   *See* ECF 76, at 27.

### C.  Count VIII: Supervisory Liability Against Official Capacity Defendants

Official Capacity Defendants argue that Count VIII alleging a failure to train under § 1983 should be dismissed because the State of Maryland is the real party in interest, and it has not waived Eleventh Amendment immunity.  ECF 75, at 23–30.  Eleventh Amendment immunity "limits the Article III jurisdiction of the federal courts to hear cases against States and state officers acting in their official capacities." *Kitchen v. Upshaw*, 286 F.3d 179, 183 (4th Cir. 2002).  "The Eleventh Amendment grants 'an unconsenting State [immunity] from suits brought in federal court by her own citizens as well as by citizens of another State.'" *TFWS, Inc. v. Schaefer*, 242 F.3d 198, 204 (4th Cir. 2001) (quoting *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)).

There can be no dispute that any suit against Official Capacity Defendants for money damages fails to pass Eleventh Amendment muster.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office[, and a]s such, it is no different from a suit against the State itself." (citations omitted)).  Plaintiff appears to concede as much.  *See* ECF 76, at 25 ("Plaintiff does not seek retrospective remedies from the Official Capacity Defendants—either in the form of damages or equitable relief.").  Accordingly, Eleventh Amendment immunity bars the claims for money damages against all Official Capacity Defendants. *Will*, 491 U.S. at 70.

Plaintiff asserts that the lawsuit against the Official Capacity Defendants nonetheless survives Eleventh Amendment immunity under the *Ex parte Young* exception because Plaintiff "alleges an ongoing violation of federal law in the form of constitutionally inadequate training of

correctional officers at Maryland prison facilities."  ECF 76, at 19.  "[T]he *Ex parte Young* exception to Eleventh Amendment immunity remains generally available to a plaintiff who seeks prospective declaratory and injunctive relief against a state official for an ongoing violation of federal law." *TFWS, Inc.*, 242 F. 3d at 204 (citations omitted).  However, "[j]ust because a private citizen's federal suit seeks declaratory injunctive relief against State officials does not mean that it must automatically be allowed to proceed under an exception to the Eleventh Amendment protection." *Bell Atl. Md., Inc. v. MCI Worldcom, Inc.*, 240 F.3d 279, 294 (4th Cir. 2001).  To determine if this exception applies, courts consider "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 242 (4th Cir. 2020) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).  This is a "straightforward inquiry" and "does not include an analysis of the merits of the claim." *Verizon Md., Inc.*, 535 U.S. at 646.

Plaintiff contends he has pleaded an ongoing violation of federal law by alleging inadequate "entry-level and in-service training for Maryland correctional officers" resulting in a lack of adequate training in methods of intervening in inmate-on-inmate altercations, including "safely removing an inmate from his cell when there is a credible threat of violence against that inmate" and "[d]isarming or disabling an assailant from outside of a locked cell."  ECF 44 ¶¶ 152–53.  Plaintiff alleges that the five Official Capacity Defendants have "the authority to remedy this ongoing constitutional violation by virtue of their responsibility for maintaining inmate security and instituting adequate training policies."  ECF 76, at 23; ECF 44 ¶¶ 23–27, 154–55.

Defendant counters that there is no continuing violation of federal law and that Plaintiff's complaint only concerns allegedly unconstitutional conduct that occurred in the past by individuals other than the Official Capacity Defendants.  ECF 75, at 26.  The Court agrees.

The crux of Count VIII is that Plaintiff's March 7, 2020, assault at the hands of a fellow inmate could have been prevented had the Official Capacity Defendants provided better training for subordinate staff.  ECF 44 ¶ 152.  This type of "backwards-looking" relief is not implicated by *Ex parte Young* and remains barred by the Eleventh Amendment.  *See Howell v. Hogan*, Civ. No. SAG-22-0408, 2022 WL 17812641, at *3 (D. Md. Dec. 19, 2022) (noting that the *Ex parte Young* exception is inapplicable when a Plaintiff "seeks a declaration relating to past state actions").  Plaintiff attempts to manufacture an *Ex parte Young* exception by asserting an ongoing, prospective violation (*i.e.*, that the statewide training procedures are constitutionally deficient in that they are not designed to ensure "reasonable safety" as guaranteed under the Eighth Amendment because they do not adequately train correctional officers to respond to cellmate-on-cellmate violence).  ECF 44 ¶ 153.  Plaintiff further asserts that though he is no longer housed at the facility where the March 7, 2020, assault occurred, he remains housed at a Maryland correctional institution and thus still faces possible harm due to inadequate training.  *Id.* ¶ 156.  Plaintiff asks the Court to order that the Official Capacity Defendants improve correctional training by developing and instituting policies about responding to cellmate violence.  *Id.* ¶ 158.

The Court must look to the "essence" of the relief requested, not merely the language in which it is "formally couched."  *Republic of Paraguay v. Allen*, 134 F.3d 622, 628 (4th Cir. 1998); *see id.* (declining to apply *Ex parte Young* exception when the relief requested was "quintessentially retrospective: the voiding of a final state conviction and sentence"); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997) (declining to apply *Ex parte Young* exception when relief requested, enjoining state officials from exercising jurisdiction over lands claimed by the Tribe was the "functional equivalent" of a quiet title action against the state and not prospective in form).  Plaintiff's allegation that the constitutional violation is ongoing is entirely speculative,

namely that there was (and remains) a training deficiency that may continue to threaten Plaintiff's well-being.  ECF 44 ¶ 147 ("On information and belief, Eastern Correctional Institution, where Plaintiff is [currently] incarcerated, suffers from the same, if not worse, deficiencies in training that exist at MCTC and other facilities in the Maryland prison system.").  Even ignoring the merits of the allegations, as the Court must do at this stage, the Court nevertheless concludes the "essence" of the requested relief is backward-looking; Plaintiff necessarily rests his claim on the fact that training was inadequate on March 7, 2020, and therefore must, he assumes, remain inadequate now.  If such a bare allegation against high-level state officials was sufficient to overcome Eleventh Amendment immunity, the *Ex parte Young* exception would quickly swallow the Eleventh Amendment in all § 1983 cases involving state employees so long as those employees, at some point, were trained.  Even if the Court were willing to read the *Ex parte Young* exception as broadly as Plaintiff does, Plaintiff's claim nonetheless fails as it rests entirely on the bare allegation that the training in place in March of 2020 violated the Eighth Amendment, and continues to do so.  This is little more than a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" that fails to "plausibly give rise to an entitlement to relief."  *Ashcroft*, 556 U.S. at 679.  While there are certainly cases where the *Ex parte Young* applies to supervisory

personnel in a prison setting,[8] the present matter is not, at least as currently pled, one of them.[9]

Count VIII is dismissed with prejudice.

Even were the Court to overlook the Eleventh Amendment and proceed to the merits,

Plaintiff has failed to sufficiently plead supervisory liability for inadequate training.  "While

inadequacy of [] training can serve as a basis for liability under § 1983, this is so only where the

failure to train is so flagrant that it amounts to 'deliberate indifference' on the part of the

---

[8] "[G]enerally 'all institutional litigation involving state prisons,' . . . is brought under the *Ex parte Young* exception."  *Hope v. Harris*, 861 F. App'x 571, 578 (5th Cir. 2021) (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1252 n.6 (5th Cir. 1988)).  "In fact, '[t]he exception is so well established [in that context] that' such cases often do not even "mention[ ] . . . *Ex parte Young*."  *Id.* (quoting *Brennan*, 834 F.2d at 1252 n.6 (alteration in original)); *see, e.g.*, *Death Row Prisoners of Pa. v. Ridge*, 948 F. Supp. 1258, 1264–65 (E.D. Pa. 1996) (holding prisoners § 1983 claim seeking declaratory relief fit within *Ex parte Young* exception); *Wilson v. United States*, 332 F.R.D. 505, 518, 529 (S.D.W. Va. 2019) (permitting prisoners to amend § 1983 complaint to add additional official capacity defendants that were prison employees, including a prison mailman and prison librarian that plaintiff claimed enforced unconstitutional policies in the kitchen, medical, mailroom, and library departments under the *Ex parte Young* exception); *Booth v. Maryland*, 112 F.3d 139, 144 (4th Cir. 1997) ("[A] petition for a writ of habeas corpus falls squarely under *Ex Parte Young*—it is an action brought against state officials to prevent the continued detention of a prisoner pursuant to an unlawful conviction or sentence."); *Lynch v. Hubbard*, 47 F. Supp. 2d 125 (D. Mass. 1999), *aff'd*, 248 F.3d 1127 (1st Cir. 2000) (dismissing Eleventh Amendment immunity defenses as "meritless" when a prisoner sought declaratory and prospective injunctive relief to compel a state official to conform her agency's activities to the requirements of the federal constitution).  However, each of the claims noted above rested on unquestionably prospective relief and not, as here, an attempt to transform a complaint alleging wrongdoing by correctional officers on a specific date into an ongoing constitutional violation orchestrated at the highest level.

[9] Plaintiff alleges that an allegation that training is deficient made on Plaintiff's "information and belief" is "sufficient to plead a training deficiency where, as here, 'the facts are peculiarly within the possession and control of the defendant.'"  ECF 76, at 14 (citing *Danvers as Next Friends of Danvers v. Loudoun Cnty. Sch. Bd.*, Civ. No. 1:21-1028, 2022 WL 4585524, at *13 (E.D. Va. Sept. 29, 2022).  However, Plaintiff ignores that the Fourth Circuit has held that claims based "upon information and belief" often represent conclusory allegations that are "insufficient to defeat a motion to dismiss."  *Harman v. Unisys Corp.*, 356 F. App'x 638, 640–41 (4th Cir. 2009) (citing *Twombly*, 550 U.S. at 555).  Moreover, as in the very case cited by Plaintiff, even if the Court were to accept the claim that training was inadequate, Plaintiff has failed to plausibly "connect[] that failure to" the events of March 7, 2020, and beyond by failing to allege a causal link between the actions of Officers Souders and Crites and the alleged failure to train.  *Danvers*, 2022 WL 4585524, at *13 (citing *Chennault v. Mitchell*, 923 F. Supp. 2d 765, 788 (E.D. Va. 2013)).

municipality with respect to 'the rights of persons with whom the [trainees] come into contact.'" *Hall v. Fabrizio*, Civ. No. JKB-12-754, 2012 WL 2905293, at *2 (D. Md. July 13, 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  Thus, "[e]ven at the pleadings stage, a plaintiff seeking to impose liability on a failure-to-train theory cannot rely on legal conclusions and speculations, but must allege at least some facts showing: (1) the nature of the training; (2) that any failure to train was a deliberate or conscious choice by [defendants]; and (3) that any alleged constitutional violations were actually caused by the failure to train." *Id.*

Plaintiff's complaint asserts that the Official Capacity Defendants are "DPSCS officials in charge of overseeing correctional facilities, correctional training, and correctional standards," and thus "have the responsibility to ensure proper training is in place for all Maryland correctional officers." ECF 44 ¶ 154.  Plaintiff also alleges that "Officer Crites' and Officer Souders' failure to protect Plaintiff from Mr. Hammonds' assault was directly and proximately caused by DPSCS's failure to conduct sufficient entry-level and in-service training for Maryland correctional officers." *Id.* ¶ 152.  Though Plaintiff vaguely identifies two types of training that he believes may have prevented his assault on March 7, 2020, or at least minimized the severity of the injuries he suffered, Plaintiff fails to plausibly allege that such training was not provided or "that any failure to train was a deliberate or conscious choice by [the Official Capacity Defendants]." *Calhoun-El v. Bishop*, Civ. No. RDB-13-3868, 2016 WL 5453033, at *4 (D. Md. Sept. 29, 2016).

As Judge Hollander correctly noted, "it is clear that stating a claim for failure to train requires more than bald assertions that [] officers were not properly trained." *Jones v. Chapman*, Civ. No. ELH-14-2627, 2015 WL 4509871, at *20 (D. Md. July 24, 2015).  Yet this is precisely what has happened here as Plaintiff has "stated in broad, conclusory terms and in a variety of different ways," *Peters v. City of Mount Rainier*, No. GJH-14-00955, 2014 WL 4855032, at *5

(D. Md. Sept. 29, 2014), that Plaintiff's injuries were "directly and proximately caused by DPSCS's failure to conduct sufficient entry-level and in-service training for Maryland correctional officers." ECF 44 ¶ 152.  More than bare conclusions are required to sufficiently plead supervisory liability on a theory that an injury at the hands of subordinates was caused because those subordinates were not properly trained.  *See Jones v. Jordan*, Civ. No. GLR-16-2662, 2017 WL 4122795, at *6 (D. Md. Sept. 18, 2017) (noting that a plaintiff had properly alleged "specific deficiencies" with police training when the plaintiff repeatedly cited to a Department of Justice report summarizing the training and thus did not simply state "'in broad, conclusory terms' that [the police department] failed to train and supervise its officers." (citation omitted)).

Plaintiff urges otherwise and points the Court to *Shipley v. Disney*, Civ. No. SAG-21-3173, 2022 WL 2789076, at *8 (D. Md. July 15, 2022) for the proposition that judges "in the District of Maryland have consistently held similar failure-to-train allegations to be sufficient at the pleading stage."  ECF 76, at 14.  However, *Shipley* presented entirely different facts where the supervisor in a homicide investigation was alleged to have approved a report written by subordinate officers that the supervisor knew contained a "false narrative" and also knew that critical exculpatory information was "not transmitted to the prosecutor" or included in the homicide file.  *Shipley*, 2022 WL 2789076, at *9.  Here, Plaintiff points to no such specific knowledge on the part of the Official Capacity Defendants and instead relies on conjecture to establish the nature of the training that was allegedly not provided, to support the claim that this failure was a deliberate choice on the part of the Official Capacity Defendants, and to tie March 7, 2020, to that alleged failure to train. More is required to successfully plead supervisory liability.

Perhaps more importantly, though Plaintiff asserts in Count VII that the failure to protect Plaintiff was attributable to a lack of training on the part of Officers Crites and Souders, the

remainder of the complaint outlines alleged misconduct that seems entirely unrelated to a lack of adequate training. *See, e.g.*, ECF 44 ¶¶ 2–3 (alleging that Crites and Souders ignored "multiple opportunities to intervene" in the assault of Plaintiff by his cellmate and "repeatedly refused to allow [Plaintiff] to obtain necessary medical attention."). In other words, "Plaintiff has not plausibly alleged that the [Crites' and Souders'] decision to engage in the alleged intentional wrongful [conduct]. . . resulted from some training deficiency." *Funari v. Md. Dep't of Pub. Safety & Corr. Servs.*, Civ. No. SAG-20-03474, 2022 WL 1061977, at *4 (D. Md. Apr. 8, 2022). Moreover, as with the failure to supervise allegations, Plaintiff has failed to allege a "history of widespread abuse" that is necessary to plead a failure to train allegation. *See Loya v. Wexford Health Sources, Inc.*, No. GJH-19-1646, 2020 WL 1158575, at *4 (D. Md. Mar. 9, 2020) (citing *Wellington*, 717 F.2d at 936). Regardless, even if Plaintiff had properly alleged "[s]upervisory liability . . . to the highest levels of state government," *Slakan*, 737 F.2d at 373, the Court finds that Eleventh Immunity prevents the suit to continue against Defendants Moore, Liebno, Martin, Harvey, and Jackson.

## IV.   CONCLUSION

For the reasons indicated above Defendants motion to dismiss is GRANTED. Count V is dismissed with prejudice. Count VII is dismissed without prejudice and with leave to amend. Count VIII is dismissed with prejudice.


Dated: <u>January 26, 2024</u>                              <u>          /s/          </u>
                                                            Brendan A. Hurson
                                                            United States District Judge